Daniel HUNTER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 279, 2000.

Supreme Court of Delaware.

Submitted: June 19, 2001.

Decided: Aug. 22, 2001.

Reargument and Rehearing En
Banc Denied Oct. 19, 2001.

Bernard J. O'Donnell and Nicole Marie Walker (argued), Office of Public Defender, Wilmington, Delaware, for Appellant.

Peter Veith, Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, HOLLAND, and STEELE, Justices.

STEELE, Justice:

Daniel Hunter appeals the Superior Court's order that denied his motion to suppress cocaine police seized from him during a pat-down search. Following a bench trial, the trial judge found Hunter guilty of trafficking in cocaine and possession with intent to delivery and sentenced him to six years at Level V.[1] Hunter filed a timely notice of appeal. Hunter argues that a police officer violated his constitutional right to be free from unreasonable searches and seizures when the officer detained him solely on the basis of an outdated and invalid arrest warrant and then frisked him and ultimately seized cocaine from his trouser pocket. Hunter argues that reliance upon the outdated warrant cannot supply the probable cause necessary for a constitutionally valid arrest, search and seizure. Hunter further argues that the trial judge erred by placing on him the burden of establishing that a challenged warrantless search and seizure violated his constitutional rights. Because we find the police officer's warrantless search to be reasonable, we conclude that the trial judge did not err when he denied Hunter's motion to suppress and we affirm the judgment of the Superior Court.

I

The facts are not in dispute.[2] In December 1997, Officer Michael F. Rodriguez, a Wilmington Police detective assigned to the federal Drug Enforcement Agency, began investigating Corey Medley, a friend of Hunter's, for trafficking in cocaine. Although his investigation of Medley had begun in December 1997, by April 2000, Rodriguez still had not located Medley. Sometime during his investigation, Rodriguez learned from an informant that Hunter and Medley were friends. While investigating Hunter as a possible lead to find Medley, Rodriguez learned that Hunter had an outstanding arrest warrant for failing to appear in Municipal Court for a traffic offense.

On April 20, 2000, Rodriguez learned from his partner that Medley, now a federal fugitive, might be at Hunter's house in Middletown. At approximately noon, Rodriquez drove to Hunter's house and began surveillance. Rodriguez watched two individuals, whose identity he could not determine, leave the house, get into a car and drive in a direction towards Newark. Rodriguez followed the car to Newark where he watched the two individuals enter a restaurant. Rodriguez followed them but did not immediately see them when he scanned the crowd. He then noticed the two coming out of a bathroom together. At that time, he identified the two as Medley and Hunter. Rodriquez placed Medley under arrest on a federal warrant and told

---

1. According to Hunter, yet unsupported by the record, he was also tried, convicted and sentenced for carrying a concealed deadly weapon and resisting arrest.

2. This conclusion alone resolves any contention that where the trial judge placed the burden on the Motion to Suppress had any real significance to the outcome in this case.

him to place his hands on the wall. Rodriguez told Hunter that he was under arrest for the Municipal Court warrant and told him to place his hands on the wall.

Rodriguez testified that as he was holding Medley and radioing his partner, who was outside the restaurant, he saw Hunter remove his hand from the wall and place it in his "cargo pants" ' right pocket.[3] Rodriguez removed Hunter's hand from the pocket and placed it back on the wall. Fearing that Hunter might possess a weapon, Rodriguez testified that he:

> conducted a frisk of *that pocket.* I frisked, pushed, securing it. When I did, I heard a crunch as if it was plastic bags. I felt chunky substances inside. Based on my training and experience, I know that cocaine is often cooked into crack cocaine.... So with that, I reached in and removed it. There were two plastic bags and each contained a white chunky substance.[4]

By removing what ultimately proved to be cocaine from Hunter's pocket, Rodriguez had seized the cocaine for the purpose of this Motion to Suppress. He then finished the process of arresting Medley and Hunter. Rodriguez later learned that the outstanding warrant on which he arrested Hunter had been cleared sometime before the arrest. Rodriguez testified that while he had inquired about Hunter sometime between December 1997 and February 1998, he had not inquired further between February 1998 and April 20, 2000,

the date of the arrest, to determine whether the warrant for Hunter remained valid. Rodriquez explained that he had not inquired further to determine the warrant's validity because Medley, not Hunter, was the subject of his investigation. Both parties agree that at the time of the seizure complained of, the arrest warrant was outdated and invalid.

## II

Hunter argues that the trial judge erred by placing the burden on him to show by a preponderance of the evidence that Rodriguez violated his Fourth Amendment rights. The State argues that the trial judge applied the correct burden, citing *State v. Thomason*[5] for the broad proposition that on a motion to suppress, the defendant bears the burden of establishing that a challenged search and seizure violated the Fourth Amendment. When there are no issues of fact in dispute, this Court reviews *de novo* the trial judge's alleged errors in formulating and applying the law.[6] Despite some arguable earlier confusion in the Delaware case law over which party bears the burden of proof on a motion to suppress evidence seized during a *warrantless* search, the rule in Delaware should now be clear. The State bears the burden of proof.[7] As such, any statement by the trial judge that placed the burden of proof on Hunter would be incorrect. This mere passing misstatement of law, however, does not affect our

---

**3.** This Opinion assumes the reader understands that "cargo pants" means trousers with large, deep pockets about thigh level on each leg as well as traditional pockets.

**4.** Appx. to Appellant's Op. Br. at A–21 (emphasis added).

**5.** Del.Super. Cr. A. No. IN90–07–0002, Goldstein, J., 1994 WL 637294 (March 14, 1994) Mem. Op. at 5.

**6.** *Jones v. State,* Del.Supr., 745 A.2d 856, 860 (1999).

**7.** *See McAllister v. State,* Del.Supr., No. 222, 2000, Holland, J. (July 31, 2001) (ORDER); *see also Floudiotis v. State,* Del.Supr., 726 A.2d 1196 (1999); *Mason v. State,* Del.Supr., 534 A.2d 242 (1987); *State v. Prouse,* Del. Supr., 382 A.2d 1359 (1978); *Young v. State,* Del.Supr., 339 A.2d 723 (1975).

analysis of the trial judge's ultimate determination to deny the motion because the applicable law when applied to the undisputed facts here leads us to conclude that Rodriguez conducted a reasonable warrantless search and thus did not violate Hunter's constitutional right to be free from unreasonable warrantless searches and seizures.

## III

 The trial judge's evaluation of whether the police had probable cause to arrest or reasonable suspicion to approach Hunter is a mixed question of law and fact. To the extent that we examine the trial judge's legal conclusions, we review the trial judge's determinations for errors in formulating or applying legal precepts.[8] To the extent the trial judge's decision is based on factual findings, we review to determine whether there was sufficient evidence to support the findings and to determine whether those findings were the result of a logical and orderly deductive process.[9]

At a hearing to suppress the cocaine Rodriguez seized from Hunter, Hunter argued that Rodriguez violated his Fourth Amendment rights when he relied upon an outdated and invalid arrest warrant to support his decision to stop Hunter. Hunter argued that reliance upon the outdated arrest warrant could not supply the probable cause required to make the arrest valid.

The State argued that because Rodriguez relied on the outdated arrest warrant in good faith, the good faith exception to the exclusionary rule should have applied. In the alternative, the State argued that Hunter's hand movement towards his pants' pocket served as an intervening event, providing Rodriguez with probable cause to frisk Hunter and thereby remove the taint of the outdated and invalid warrant.

The trial judge found it unnecessary to address the State's arguments; instead, the trial judge admitted the cocaine "absent a valid arrest warrant as discovered pursuant to a lawful protective detention and pat-down based on the officer's reasonable and articulable suspicion that Hunter was armed and dangerous."[10] He based his decision primarily on the "automatic companion" rule, which provides that "[a]ll companions of the arrestee [ (here Medley) ] within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed."[11] He then stated that even if the automatic companion rule is inapplicable, the limited search was nonetheless valid because, given the facts in this case, Rodriguez "believed it was necessary to pat-down Hunter for the protection of himself and the other restaurant patrons."[12]

 While the trial judge's decision arguably relied primarily on the automatic companion rule, our conclusion in this case does not rest on that rule. Instead, we conclude that the record supports the trial judge's determination that Rodriquez conducted a reasonable warrantless search of

8. *Downs v. State,* Del.Supr., 570 A.2d 1142, 1144 (1990).

9. *Dupont v. Dupont,* Del.Supr., 216 A.2d 674, 680 (1966). Again, the facts here are not disputed.

10. *State v. Hunter,* Del.Super., I.D. No. 9904014932, Gebelein, J., 2000 WL 710103 (Apr. 10, 2000) Mem. Op. at 4.

11. *United States v. Berryhill,* 9th Cir., 445 F.2d 1189, 1193 (1971).

12. *State v. Hunter,* at 11.

Hunter based upon the fact that Rodriguez "believed it was necessary to pat down Hunter for the protection of himself ..." and that while the officer did not have a valid arrest warrant, he did have a "reasonable and articulable suspicion" that Hunter could be armed. Therefore, the trial judge correctly concluded that Rodriguez could conduct a "lawful protective detention and pat down."[13]

■ While executing a valid arrest warrant for Medley, Rodriguez seized command of the situation in a crowded restaurant by placing Medley and Hunter against the wall.[14] Rodriguez knew Medley and possibly Hunter to be a drug dealer. Based on his experience, he knew drug dealers often carry weapons.[15] Rodriquez was outnumbered two to one. When Rodriguez saw Hunter reach for his pocket, he grabbed Hunter's hand. Not knowing whether Hunter possessed a weapon, Rodriguez patted down Hunter's large, deep, cargo pocket. *Simultaneously* with the movement to feel for weapons (a "securing push") he felt what he recognized, based on his experience as a narcotics agent, to be consistent with packaged chunks of crack cocaine.[16] Hunter's movement in reaching for his pocket in this situation gave Rodriguez a reasonable basis to pat him down. The trial judge found it significant, and we agree, that the officer's pat down search went only to the one

pocket to which the furtive motion was directed and, therefore, not beyond the reasonable parameter of a legitimate search for weapons. In the course of the reasonably restrictive pat down search, without further invasion of Hunter's person, Rodriguez *simultaneously* discovered through a sensory stimulating touch (hearing a crunch, feeling chunks), evidence consistent, in his experience, with possession of contraband. At that point Rodriguez was compelled to seize what his senses and experience led him to believe to be contraband and he did so. Given the totality of the circumstances, Rodriguez's actions were reasonable.[17]

### Conclusion

The trial judge's findings are based on undisputed facts, and his legal conclusion that the police officer properly conducted a limited, reasonable search for his own protection which resulted in the discovery and seizure of contraband is rationally based on those facts and legally correct. Therefore, we affirm the judgment of the Superior Court.

---

13. *Id.*

14. *See Michigan v. Summers,* 452 U.S. 692, 702, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

15. *See Hovington v. State,* Del.Supr., 616 A.2d 829, 832 (1992) (citing *Michigan,* at 702, 101 S.Ct. 2587).

16. In *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the

Supreme Court created the "plain feel" exception to the Fourth Amendment. Any time an officer frisking a suspect feels an object whose character as contraband is immediately apparent to the officer's touch from outside the suspect's clothing, the officer may seize the object.

17. *Id.* at 833.