# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1303017883 |
| | ) | |
| | ) | |
| | ) | |
| ANTHONY L. DALE, | ) | |
| | ) | |
| Defendant. | ) | |

Date submitted: April 15, 2016
Date decided: April 19, 2016

## COMMISSIONER'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

Periann Doko, Esquire, Deputy Attorney General, Delaware Department of Justice, 820 N. French St. 7th Floor, Criminal Division, Wilmington, Delaware, 19801, Attorney for the State.

Patrick J. Collins, Esquire, 716 North Tatnall Street, Suite 300, Wilmington, Delaware 19801. Attorney for the Defendant.

**MANNING**, **Commissioner**

This 19th day of April 2016, upon consideration of defendant Anthony L. Dale's motion for postconviction relief ("Motion"), I find the following:

## Procedural History

On September 24, 2012, Dale was indicted on the following charges: Possession of a Firearm by a Person Prohibited (11 *Del. C.* § 1448); Carrying a Concealed Deadly Weapon (11 *Del. C.* § 1442); Possession of Ammunition by a Person Prohibited (11 *Del. C.* § 1448); and Aggravated Possession (16 *Del. C.* § 4754(3)). Prior to trial, the State entered a *nolle prosequi* on the count of Aggravated Possession.

Following a two day jury trial, Dale was found guilty on February 25, 2014, of Possession of a Firearm by a Person Prohibited, Carrying a Concealed Deadly Weapon and Possession of Ammunition by a Person Prohibited. He was sentenced on May 24, 2013, to four years at Level V followed by probation.

Dale originally filed a timely *pro se* Rule 61 motion for postconviction relief on July 31, 2014. Dale also filed a Notice of Appeal to the Delaware Supreme Court but the appeal was dismissed on February 11, 2015, after he filed a Notice of Voluntary Dismissal of Appeal.[1]

---

[1] D.I. 43.

Pursuant to Superior Court Rule 132, Dale's Motion was referred to a Commissioner on July 10, 2015. Conflict Counsel ("Rule 61 Counsel") was appointed to represent Dale on his Motion on October 10, 2015.[2]

On December 7, 2015, with the assistance of Rule 61 Counsel, Dale filed an amended motion for postconviction relief. Trial Counsel did not file an Affidavit in response to Dale's Motion per this Court's October 2, 2015, Scheduling Order.[3] The State filed its response in opposition to Dale's Motion on March 31, 2016.[4] Dale filed a Reply to the State's Response on April 15, 2016.

Based upon my review of Dale's Motion and the trial transcripts I do not see the need for an evidentiary hearing. In my opinion, the arguments made by Dale in his Motion can be adequately determined with the factual record created at trial. Dale's amended claims for postconviction relief are:

Ground one: Trial Counsel was ineffective for stipulating that Dale was a person prohibited, resulting in prejudice to Dale.

Ground two: Trial Counsel was ineffective for failing to move to suppress the gun found during the improper search; Dale suffered constitutional prejudice.

---

[2] D.I. 47. By Order of the Delaware Supreme Court, dated November 20, 2014, Trial Counsel was placed on Disability Inactive Status and is no longer a practicing member of the Delaware Bar.

[3] D.I. 49.

[4] D.I. 57.

## Legal Standard

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[5] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires the defendant to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[6]

When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[7] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[8] An error by defense counsel, even if professionally unreasonable,

---

[5] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

[6] *Id.*

[7] *Id.* at 697.

[8] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

3

does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[9]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be reviewed from his or her perspective at the time decisions were being made.[10] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided.[11]

The procedural requirements of Superior Court Criminal Rule 61 must be addressed before considering the merits of any argument.[12] Dale's Motion was timely filed, is not repetitive, and neither of his arguments were previously adjudicated in any forum. Therefore, Dale's Motion is not procedurally barred under Superior Court Crim. Rule 61(i)(1) - (4) so I will address each claim on its merits.

## FACTS

After closely reviewing the trial transcript, I find the following facts were established at trial:

---

[9] *Strickland*, 466 U.S.at 691.

[10] *Id.*

[11] *Id.*

[12] *See Younger*, 580 A.2d at 554.

4

On June 19, 2013, Sergeant Looney of the Wilmington Police Department was responding to a call regarding a group of disorderly subjects loitering in the area of the 2300 block of North Carter Street in Wilmington, Delaware. The area is known for high incidents of crime.[13] Sergeant Looney was wearing a standard Wilmington police uniform and was driving an unmarked Ford Explorer SUV that was outfitted with an emergency lighting package.[14]

As Sergeant Looney drove down Carter Street, he observed a black male, who he identified at trial as Dale, sitting in the front passenger seat of a parked Nissan Altima. When Sergeant Looney's car pulled parallel to the Altima, Dale quickly laid his upper body over the center console and onto the driver's seat area with his arms on the driver's floor area and his head on the steering wheel. Finding this behavior suspicious, Sergeant Looney "squared" the block and drove back down Carter Street. Again, Dale laid his upper body onto the driver's seat with his arms on the driver's floor and his head on the steering wheel.

Finding Dale's actions suspicious, Sergeant Looney drove around the block to drive past the vehicle for a third time. Once again, Dale laid down onto the driver's seat with his head on the steering wheel and his right arm and hand in the foot-well area. At that point, Sergeant Looney parked his police vehicle slightly

---

[13] Tr. at 36.

[14] Tr. at 19.

5

behind the Altima, turned his high-beam headlights on, and approached the passenger side door on foot.

Dale was observed peeking between the seats to get a look out of the back window at Sergeant Looney as he approached. When Sergeant Looney reached the passenger's side door, he again observed Dale laying across the driver's seat with his hands on the driver's floor. Using his flashlight to get his attention, Sergeant Looney asked Dale to sit up and open the vehicle door. Dale complied, opening the passenger's side door, and then handed Sergeant Looney his Delaware identification card upon request. Sergeant Looney testified that Dale seemed nervous and "was very hesitant in his responses and just seemed to be looking around his, he was clearly, like, oh, no, the police are here."[15] At some point during the encounter officers learned that the vehicle was not registered to Dale or anyone with the same surname.[16]

Due to Dale's nervousness and his behavior inside of the vehicle, Sergeant Looney asked him to exit the vehicle. While this was occurring, another officer, Officer Ham, opened the driver's door and checked the floor area where Dale's hands had been observed on the prior occasions. Dale was not handcuffed or physically restrained during this portion of the encounter. Officer Ham could see

---

[15] Tr. at 30.

[16] Tr. at 31.

that there was something under the driver's floor mat as it was folded and did not sit "flush" to the floor. When Officer Ham lifted the floor mat he immediately observed a loaded .22 caliber semi-automatic handgun. A criminal history check of Dale revealed that he had a prior felony conviction for Possession with Intent to Deliver a Schedule II Controlled Substance from 2007.

Dale was immediately searched and taken into custody. Subsequent DNA testing by the State revealed a mixed DNA profile on the gun, but with male DNA present. Dale's DNA could neither be included nor excluded. Fingerprint testing of the gun was inconclusive.

## Ground One: Stipulating that Dale was a Person Prohibited

Dale argues that Trial Counsel was ineffective because he stipulated that Dale was a person prohibited—as opposed to moving to sever the charge altogether. By stipulating, Dale argues, the jury learned that he was prohibited and this left them "free to speculate as to why" and to "draw the impermissible conclusion that [he] was a person of bad character with a general criminal disposition."[17] Dale also argues that this stipulation "likely confused the jury" as he was not in direct possession of a firearm. Dale argues that "[n]o trial strategy exists that would justify admitting to the jury in a weapons case that the defendant

---

[17] Motion at 14.

7

is prohibited. That is why it is routine practice [in this Court] to sever the person prohibited charge… ."[18]

The State argues that Dale was not prejudiced by Trial Counsel's decision to stipulate and that it was a reasonable tactical decision. By stipulating that Dale was prohibited, the State argues that Trial Counsel sought to "sanitize" the indictment and minimize any prejudice that would be created if the jury learned of Dale's 2007 conviction for Possession with Intent to Deliver Cocaine.

Additionally, the State argues that "the evidence [of the prior conviction] would have been admissible regardless of the stipulation."[19] With this point I cannot so readily agree. As correctly noted by Rule 61 Counsel, the trial court would have first needed to conduct a balancing test pursuant to Delaware Rule of Evidence 609(a)(1) before the conviction could have been used by the State to impeach Dale, and even then, *only* if he testified.

I recognize that there are contexts in which sanitizing an indictment, as opposed to moving to sever, may make tactical sense. For example, the defendant who fully expects to testify and counsel knows he will be cross-examined about prior convictions anyway. In such cases, the Court will usually issue an appropriate limiting instruction to the jury about how to consider such evidence. However,

---

[18] *Id.*

[19] Response at 7.

under the facts of this case, I can discern no reasonable trial strategy for not moving to sever the Person Prohibited charge completely. Simply put, Dale had nothing to lose by moving to sever the charge to a separate trial, but much to gain. Trial Counsel's stipulation was a half-measure—at best.

The Superior Court almost universally grants motions to sever such charges due to the inherent prejudice created when the jury learns that a defendant has a prior felony conviction. Trial Counsel's failure to move to sever the Person Prohibited charge was professionally unreasonable under the fats of this case and constituted ineffective assistance of counsel.

Although Trial Counsel's representation of Dale was unreasonable, before a conviction can be overturned, *Strickland* requires that there is a "reasonable probability" that the outcome of the trial would have been different but for Trial Counsel's professional errors.[20] The facts in this case show that Dale was sitting in the front passenger seat of a car that did not belong to him, at night, in a high crime area, a block or so away from his house while acting in a manner most people would find suspicious. Upon investigation by the police, a handgun was found in close proximity to where Dale was seen repeatedly reaching. It appears that the jury reasonably concluded that Dale hid the gun under the driver's side floor mat

---

[20] *Strickland*, 466 U.S. at 691.

(or was retrieving it) when Sergeant Looney drove past each time and then, finally, approached Dale on foot.

The question that must be addressed then becomes: is there a "reasonable probability" the jury would have acquitted Dale had they not know he was prohibited? To be clear, this is a close call in my opinion. However, I must conclude that while there is a *possibility* Dale would have been acquitted, there is not a reasonable *probability* of it. Under *Strickland*, "probability" does not mean a mere "possibility"—it is a higher standard. In *Neal v. State*, the Delaware Supreme Court expounded on the *Strickland* prejudice burden of proof analysis:

> A reasonable probability of a different result requires a probability sufficient to undermine confidence in the outcome. Although this standard is not mathematically precise and does not necessarily require a showing of more likely than not, *Strickland* requires more than a showing merely that the conduct could have or might have or it is possible that it would have led to a different result. The likelihood of a different result must be substantial, not just conceivable.[21]

In the context of Dale's very unusual behavior and the fact that he seemed to be reaching or looking for something in the driver's foot-well area of the car *each time* Sergeant Looney drove past, combined with his nervous behavior once approached by the police, I do not think it likely that the outcome of Dale's trial would have changed had the jury *not* known he was prohibited. Trial Counsel's

---

[21] *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (internal quotations and citations omitted).

failure to sever the Person Prohibited charge was objectively unreasonable—however, it did not prejudice Dale.

## **Ground Two: Failure to file a suppression motion**

Normally, Trial Counsel will file an affidavit with the Court explaining why he or she elected not to file a motion to suppress. Typically, the explanation is that counsel felt there was no good faith basis to do so. In this case, however, Trial Counsel's thinking and reason for not filing a suppression motion is unknown. To that point, I will skip the first prong of *Strickland* and simply presume that Trial Counsel's failure to file a motion to suppress in this case was objectively unreasonable.

As previously noted, *Strickland* requires that Trial Counsel's unreasonable conduct resulted in actual prejudice to Dale before his conviction will be overturned. Therefore, the question becomes: is there a reasonable probability that a motion to suppress would have been successful and change the outcome of the case? I note that the search and seizure in this case was warrantless, thus the onus would have been on the State to show by a preponderance of the evidence that the search was reasonable[22]—advantage Dale. Additionally, a successful motion to suppress as to the gun would have been case dispositive, except for the drug charge which the State dropped prior to trial.

---

[22] *See Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

11

As I see it, there are two distinct issues that need to be addressed: (1) the search and seizure of Dale himself; and (2) the search of the car.

### Issue One

Sergeant Looney's decision to approached Dale, asked him for his identification and question him was reasonable in light of the circumstances present; namely Dale's unusual and repeated behavior. In my opinion, Sergeant Looney conducted a valid "*Terry*-stop" pursuant to 11 *Del. C*. § 1902.[23] The trial record does not address why Sergeant Looney felt the need to search Dale, but it is irrelevant since the charge relating to the contraband found on Dale was dropped prior to trial. Additionally, it is also important to note that Officer Ham's search of the driver's side of the car was nearly simultaneous to Sergeant Looney's questioning, was not a search incident to Dale's arrest and does not appear motivated by anything other than officer safety.[24] Even if the decision to search Dale's person was unreasonable, it had no effect on the outcome of the case as the

---

[23] § 1902 Questioning and detaining suspects. (a) A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination. (b) Any person so questioned who fails to give identification or explain the person's actions to the satisfaction of the officer may be detained and further questioned and investigated. (c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime.

[24] Tr. at 30.

12

weapon was located as part of a contemporaneous, but independent, search of the vehicle.

## Issue Two

The State argues that the search of the vehicle was justified on grounds of officer safety, and even if it was not, Dale lacked standing to object to the search. I agree with the State on the both points.

The facts indicate that while being questioned, Dale was not restrained and easily could have gained access to the interior of the vehicle and any items within. Because of Dale's actions, it was certainly reasonable for the officers to be concerned about what was under the floor mat and to conduct a cursory search of the car interior for any weapons that might be used against them. This fact is especially true in light of what appeared to be an object visible under the driver's side floor mat prior to the search. Even if a reviewing court were to disagree with my conclusion on this issue, I believe it would not change the outcome of the case as Dale lacked standing to object to the search of the car in any event.

In order to have standing, Dale must "demonstrate [a] legitimate expectation of privacy in the invaded place before he may challenge the validity of a search or seizure."[25] In the context of an automobile, typically this means being the owner or an operator in legitimate possession of the car. It is well established law that a

---

[25] *Mills v. State*, 2006 WL 1027202, at *1 (Del. 2006).

13

mere passenger in a car typically lacks standing to object to a search of the car itself.[26]  Here, there is no evidence in the trial record, or supplemented by Rule 61 Counsel, to show that Dale was either.  In fact, the record strongly suggests that Dale was a trespasser in the vehicle.

Dale argues in his Reply that "if the passenger is seized personally as a result of the stop, then he has standing to object to the seizure… ." [27]  Dale cites to *Rakas v. Illinois, supra,* to support his argument.  The problem with Dale's argument, however, is that the police did not actually "stop" the car he was hiding in—it was parked on a public street.  The police did not seize Dale in the traditional "car stop" sense; rather, they simply ordered him to step out of the passenger seat of an already stopped car.  The fact that Dale was in a car almost becomes irrelevant to the 4th Amendment analysis.  The basic analysis, however, remains the same: did Dale have a reasonable expectation of privacy in *whatever* area the police searched—be it a trashcan, sidewalk, park bench or the front porch to a residence?  In this case, the answer is still the same: no.

Without proof that Trial Counsel reasonably could have established standing, Dale would most likely have lost a suppression motion as to the car.

---

[26] *See Jarvis v.* State, 600 A.2d 38, 41 n. 1 (Del. 1991) (citing *Rakas v. Illinois*, 439 U.S. 128, (1978).

[27] Reply at 6.

Therefore, Dale was not prejudiced by Trial Counsel's failure to file a motion to suppress.

## Conclusion

Trial Counsel's failures were professionally unreasonable and constituted ineffective assistance of counsel. However, they ultimately did not prejudice Dale nor undermine confidence in the reliability of his trial. For the foregoing reasons, Dale's Motion should be DENIED.

**IT IS SO RECOMMENDED.**

/s/ *Bradley V. Manning*
BRADLEY V. MANNING,
Commissioner

oc:   Prothonotary
cc:   Defendant

15