# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | **Case No.: 2311002239** |
| v. | ) | |
| | ) | |
| EASTON CAMPBELL, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: July 26, 2024
Decided: August 12, 2024

## OPINION AND ORDER

*On Defendant's First Amended Motion to Suppress and Compel Evidence*

**DENIED**

*Corinne Cichowicz, Esquire, Deputy Attorney General*, Delaware Department of Justice, 820 N. French Street, 7th floor, Wilmington, Delaware, *Attorney for the State.*

*Al Greto, Esquire,* 715 N. Tatnall Street, P.O. Box 0756, Wilmington, Delaware *Attorney for Defendant.*

**Jones, J.**

## INTRODUCTION

Having considered Defendant's First Amended Motion to Suppress and Compel Evidence, the State's Response, the File,[1] the testimony of Corporal Marley at the July 26, 2024 Suppression Hearing, the arguments of counsel, and the applicable law, the Court finds as follows.

## FACTUAL AND PROCEDURAL OVERVIEW

On November 4, 2023, at 6:29 pm, Master Corporal Joshua Marley ("Marley") of the Delaware State Police was dispatched to a two-vehicle collision on Concord Pike in the area of the on ramp to I-95 Northbound, Wilmington, Delaware. A gold 2007 Toyota Rav4 bearing Delaware Registration PC 789012 was parked, with its engine running, partly blocking the rightmost lane of travel. The Rav4 had front-end damage consistent with a collision. The second vehicle involved in the collision, a blue 2016 Ford Fusion with minor rear bumper damage, was still on scene parked in the roadway's shoulder. When Marley arrived on scene, the Defendant was seated in the Rav4 driver's seat. The Fusion's driver remained inside the vehicle and the Fusion's passenger was outside the vehicle. Marley first made contact with the Fusion's passenger.

---

[1] At the suppression hearing, a disc was marked as State's Exhibit 3. That disc contained two files from Marley's Body Worn Camera. One of those files was 4177-10-10pd Marley MP4. The second file is labelled Axon Body 3X60A617A 2023-11-04 18:36:24-0400. Following the hearing, defense counsel wrote to the Court and advised that only the MP4 file should be on the disc. The Court advised the parties that the disc contained the two files and the Court had revised only a few seconds of the 3X60A617 file to determine what it was. The Court did not review this file beyond the few seconds. This file was not considered by the Court in any way in deciding the instant Motion.

Marley then made contact with the Defendant. Marley's observations of the Defendant were as follows:

a. The Defendant was involved in a motor vehicle collision;

b. The Defendant had a strong odor of alcohol emanating from his breath and/or person;

c. The Defendant stated he was coming from a "fish fry";

d. The Defendant had extremely slurred speech;

e. The Defendant had glassy eyes;

f. The Defendant had bloodshot eyes;

g. The Defendant lacked stability once he exited his vehicle; and

h. The Defendant admitted to urinating on himself after Trooper Marley patted down the Defendant and asked why the Defendant's clothes were saturated.

The Defendant was not asked to perform a Standard Field Sobriety Test ("SFST") because of the steep roadway. Defendant was given a Preliminary Breath Test ("PBT") which read .13. Defendant was placed under arrest for Driving Under the Influence ("DUI").

Marley sought a search warrant for the Defendant's Blood. Marley's Affidavit in support of that search warrant provides:

> On 11/4/2023, M/Cpl. Marley 1343 was dispatched via RECOM to a 2 vehicle collision Investigation at Concord Pike and 95NB interchange, Wilmington, New Castle County DE. Upon arrival wearing uniform of the day and operating a fully marked DSP patrol vehicle made contact with the operator, and sole occupant

of a 2007 Toyota Rav4 bearing DE REG PC79012 Easton S. Campbell 11/24/1945. It appeared that the vehicle had front end damage from striking the rear of another vehicle also still on scene. Campbell was seated in the driver seat of the vehicle with the vehicle running. Campbell had a strong odor of alcohol, extremely slurred speech and glassy bloodshot eyes. It also appeared that he had urinated on himself, which he had confirmed to Writer.

Campbell stated that he had been coming home from a "Fish Fry" and when asked how much alcohol he had consumed his answer was inaudible. For safety of Campbell, no field tests were performed, due to what appeared to be lack of stability and balance along with the roadway having a severe slope.

Campbell was issued a PBT on scene which he produced a breath registering .115% BAC. (PBT 02662).

It should be noted that Writer is ARIDE certified and the entire encounter was recorded via BWG.

Campbell asserts that probable cause to arrest him did not exist. He also challenges the information provided to obtain the search warrant for the blood draw. Relying on *Franks v. Delaware,*[2] Campbell maintains that Marley deliberately or recklessly did not provide information in his search warrant. According to Campbell, the material omitted was:

    a. The area was not too steep for field sobriety tests;

    b. He was not unstable on his feet;

    c. He was not manifesting extremely slurred speech;

---

[2] 438 US 154 (1978).

d. The alleged portable breath result was not as stated in the affidavit(s) and from a device that was out of calibration;

e. The minor rear-end collision was in stop-and-go traffic (due to a sudden detour);

f. He was a 77-year-old person who was compelled to wait for the affiant and suffers from typical 77-year-old incontinence; and

g. There were misstatements about the PBT.

The State counters that there was probable cause for Defendant's arrest and the draw of his blood. The State also challenges the Defendant's right to a *Franks* hearing.

**STANDARD OF REVIEW**

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence."[3] But once the defendant has established a basis for his motion, the burden shifts to the State to show that the warrantless search or seizure was reasonable.[4] In the context of a DUI arrest, the State bears the burden to prove the legality and the reasonableness of the underlying stop and subsequent arrest by a preponderance of the evidence.[5] In determining whether an officer's actions were supported by reasonable, articulable suspicion, the Court examines the totality of the circumstances "as viewed through the eyes of a reasonable, trained police officer in the same or similar

---

[3] *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995); *State v. Babb*, 2012 WL 2152080, at *2 (Del. Super. Ct. June 13, 2012).

[4] *Id*; *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001) (the State bears the burden of proof on a motion to suppress evidence seized during a warrantless search.)

[5] *State v. Anderson,* 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).

5

circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[6]

## ANALYSIS

I turn first to the arrest warrant. I start with the proposition that in analyzing the issues before the Court I will not consider the PBT. There were multiple problems with the PBT including the fact that the officer did not follow the 15-minute observation period and that the PBT was out of calibration. Ignoring the PBT, this Court finds that Marley had probable cause to arrest the Defendant and seize his blood based on the following:

a. The Defendant was involved in a motor vehicle collision;

b. The Defendant had a strong odor of alcohol emanating from his breath and/or person;

c. The Defendant had extremely slurred speech;

d. The Defendant had glassy eyes;

e. The Defendant had bloodshot eyes;

f. The Defendant lacked stability once he exited his vehicle;

g. The Defendant admitted to urinating on himself, after Trooper Marley patted down the Defendant and asked why the Defendant's clothes were saturated.[7]

---

[6] *State v. Wise*, 2016 WL 7468058, at *4 (Del. Super. Dec. 22, 2016) (quoting *Purnell v. State*, 832 A.2d 714, 719 (Del. 2003)).

[7] The Court had the benefit of Marley's body worn camera. This Court's review of that BWC looking at it from the perspective of Marley on scene lead to a conclusion that: defendant was in a motor vehicle accident; defendant had been to a fish fry; Defendant did have slurred speech; Defendant lacked stability once he existed the vehicle; and defendant admitted to urinating on himself. The Court could not tell from the video, one way or the other, whether

6

These facts are sufficient to find probable cause to both arrest the defendant and secure the blood.[8]  Moreover, the fact that SFST's were not conducted is not fatal to a probable cause determination.[9]

I now turn to Defendant's request that he is entitled to relief under *Franks*. Because the factual issues surrounding Defendant's challenge to his arrest were intertwined with the factual issues surrounding Defendant's *Franks* argument, I allowed the parties at the suppression hearing to develop a *Franks* factual record.  In hindsight this should have not occurred.

I reject Defendant's entitlement to relief under *Franks*.  In *Rivera v. State*,[10] the Delaware Supreme Court outlined the requirements necessary to invoke such a remedy:

> In *Sisson v. State,* we held that "[i]f the police omit facts [from a search warrant affidavit] that are material to a finding of probable cause with reckless disregard for the truth, then the rationale of *Franks v. Delaware* applies," and the evidence obtained as a result of that search warrant must be suppressed. To succeed on a reverse-*Franks'* claim, a Defendant must show by a preponderance of the evidence that the police knowingly and intentionally, or with reckless disregard for the truth, omitted information from the search warrant affidavit that was material to a finding of probable cause.

---

Defendant's eyes were glassy or bloodshot.  The Court accepted Marley's testimony on this point as the Court found Marley credible.
[8] *Lefebvre v. State*, 19 A.3d 287, 275 (Del. 2011); *Rybicki v. State*, 119 A.3d 663 (Del. 2015).
[9] *Id.*
[10] 7 A.3d 961 (Del. 2010).

The Third Circuit has developed a two-pronged approach for analyzing reverse-*Franks* claims. First, the court must determine whether the omissions were made with reckless disregard. According to the Third Circuit, "omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know" in making a probable cause determination. As the Second Circuit stated in *Rivera v. United States,* "recklessness may be inferred where the omitted information was 'clearly critical' to the probable cause determination."

If reckless disregard is shown, the court must then address the second prong of the inquiry and determine whether the omissions were "material, or necessary, to the finding of probable cause." To determine whether an omission is "material to a finding of probable cause," the reviewing court must reconstruct the affidavit to include the newly added information, and then decide whether the "corrected" affidavit would establish probable cause.

Although the Third Circuit would apply its two-pronged approach sequentially, in our view the two prongs need not be addressed in that precise order, because we perceive no meaningful distinction between the "materiality" standard articulated by the Third Circuit, and the objective "reckless disregard" standard of "what a reasonable magistrate would want to know." Stated differently, a reasonable magistrate would want to know any fact that is material. Therefore, the materiality inquiry may proceed first, before addressing whether the police acted with "reckless disregard." If a Defendant cannot show by a preponderance of the evidence that the omitted information was material, then it does not matter whether the police made those omissions with "reckless disregard."[11]

There are two requirements that must be met in order to mandate an evidentiary hearing under *Franks*. First, the challenger's attack must be more than conclusory and

---

[11] *Id*. at 968-69.

must be supported by more than a mere desire to cross examine.  There must be an allegation of deliberate falsehood or reckless disregard of the truth.  Allegations of negligence or innocent mistake are insufficient.[12]  Second, the allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false, and they should be accompanied by a statement of supporting reasons.[13]  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained.[14]

In the instant case, Defendant did make a claim in his motion that the Officer engaged in deliberate or reckless disregard in the statements contained in his affidavit.  However, the Defendant's Motion was not accompanied by an affidavit or sworn or otherwise reliable statements of witnesses.  Nor was the absence of such explained.  For this reason alone, the *Franks* request should be denied.

Even assuming that Defendant satisfied the two-part procedural hurdle of *Franks*, the testimony of Marley, who the Court found credible, made it clear that relief under *Franks* is not appropriate.  Marley's testimony and the videos showed that: the area of the roadway involved was not flat; defendant was not stable on his feet; defendant's speech was slurred; defendant was incontinent; and there was a two car collision.  There is no evidence that material misstatements or omissions were made

---

[12] *Franks*, 438 U.S. at 171.
[13] *Id.*
[14] *Id.*

9

by Marley in his affidavit. And while there were two misstatements, they were not made deliberately or with any type of reckless disregard and they were not material.[15] Hence, relief under *Franks* is not appropriate.

## CONCLUSION

For the above reasons, Defendant's First Amended Motion to Suppress and Compel Evidence is hereby **DENIED**.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*

Francis J. Jones, Jr., Judge

cc:     *Original to Prothonotary*

---

[15] The "material" omissions Defendant identifies is that the PBT reading was "not as stated in the affidavit" and the "device was out of calibration." Marley could not have included the information that his in-the-field PBT was out of calibration in the affidavit because he did not know it was out of calibration until later in the investigation, after the affidavit was submitted. Secondarily, the blood reading contained in the affidavit was .11 when in fact it was .13. This was a typographical error at most. Putting aside the PBT findings, the search warrant without the PBT evidence was sufficient for the warrant to issue and as such it would not be a material to the finding of probable cause.