# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.: 2402003067** |
| v. | ) | |
| | ) | |
| **MASHAWN LEWIS**, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: November 15, 2024
Decided: December 2, 2024

## OPINION AND ORDER

*On Defendant's Motion to Suppress*

## DENIED

*Stephen McCloskey, Deputy Attorney General*, Attorney General's Office, 820 N. French Street, 7th floor, Wilmington, Delaware, *Attorney for the State.*

*John S. Edinger, Assistant Public Defender*, Office of Defense Counsel, 820 N. French Street, 3rd floor, Wilmington, Delaware, *Attorney for Defendant*

**Jones, J.**

During the last two weeks of January and the first week of February of 2024, Detective Lerro of the Wilmington Police Department was contacted by a past proven and reliable informant (hereinafter referred to as "CI") that a subject known to him as "Banger" or "up 30" contacted him via cellphone attempting to sell to CI an AR-Style firearm.[1] Detective Lerro knew "Banger" or "up 30" as Mashawn Lewis through previous investigations.[2] The CI provided Lerro with screenshots of Lewis with the above-described gun, a tan in color handgun with a slightly black in color extended magazine with "Holosun" optic site and flashlight attachment.[3] Detective Lerro was aware that Lewis was a person prohibited from possessing a firearm and ammunition due to two (2) felony convictions. Lerro was also aware that Lewis had an outstanding capias for Operating a Vehicle with Improper Tint.[4]

Lerro learned from Lewis's probation officer that Lewis' address was 203 N. Poplar Street. Surveillance was set up on the above residence, and when Lewis was seen exiting the residence, he was taken into custody. During a search of Defendant, a black iPhone was recovered. Investigator Moses went to the rear of 203 N. Poplar Street and observed an open window on the second floor. He later observed a tan color handgun on the ground of the rear yard. The firearm was a tan color 9 mm

---

[1] March 11, 2024, Affidavit of Probable Cause for Search Warrant of Apple iPhone attached as Exhibit A.
[2] *Id*. at 1.
[3] *Id.* at 2.
[4] Affidavit of Probable Cause for Arrest Warrant, attached as exhibit B.

handgun with a slightly black extended magazine loaded with 8 rounds.  An NCIC inquiry of the serial number revealed that it was stolen.[5]

On February 6, 2024, Mashawn Lewis was arrested for Possession of a Firearm by a Person Prohibited, Possession of Ammunition by Person Prohibited, and Receiving a Stolen Firearm.  Following his arrest a search warrant for Defendant's phone was sought.

The search warrant sought:

- Subscriber identifiers

- IMEI number

- Phone number associated with the phone

- Call logs from the time period of February 4, 2024, to February 6, 2024

- Video call logs from the time period of February 4, 2024, to February 6, 2024

- Picture/photographs/images/video from the time period of February 4, 2024, to February 6, 2024

- Text messages and multi-media messages from the time period of February 4, 2024, to February 6, 2024[6]

The Magistrate granted the search warrant on March 11, 2024.  The police then extracted the above data from the black iPhone via a Cellebrite extraction.

---

[5] Exhibit A at 2.
[6] *Id.* at 3.

Contained on the extraction is a screen recording of a video call between Defendant and an unknown individual. The screen recording was created February 5, 2024. During the video call, it appears that the Defendant is holding a tan firearm like the one that was recovered in the rear yard of 203 N. Poplar Street.

Defendant has moved to suppress the fruits of the search warrant of the phone maintaining that the search warrant was a general warrant.

**LEGAL STANDARD**

A defendant moving to suppress evidence bears the burden of establishing that a search and seizure violated his rights under the United States Constitution, the Delaware Constitution, or the Delaware Code.[7] The burden of proof on a motion to suppress is proof by a preponderance of the evidence.[8]

The United States Constitution's Fourth Amendment guarantees "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures[.]"[9] The Fourth Amendment to the United States Constitution and Article I, Section 6 of the Delaware Constitution provide that warrants must be supported by a showing of probable cause.[10] Further, under Section 2307(a) of Title 11, "[t]he warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or person sought

---

[7] *State v. Dollard*, 788 A.3d 1283, 1286 (Del. Super. Ct. 2001); *State v. Bien-Aime*, 1993 WL 138719, at *3 (Del. Super. 1993).

[8] *State v. Chandler*, 132 A.3d 133, 139 (Del. Super. Ct. 2015) (citing *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001); *State v. Abel*, 2011 WL 5221276, at *2 (Del. Super. 2011), *aff'd*, 68 A.3d 1228 (Del. 2012), *as amended* (Jan. 22, 2013)).

[9] U.S. Const. Amend. IV.

[10] DE Const., Art. 1, § 6.

as particularly as possible."[11]  Under the 'fruit of the poisonous tree doctrine' and the exclusionary rule, the use of all evidence obtained directly or indirectly as a result of an illegal search or seizure is prohibited."[12]

The Court uses a "four-corners test" to determine if, within the four corners of the affidavit of probable cause, there are sufficient facts to create a reasonable belief that evidence exists within a particular place.[13]  "An affidavit establishes probable cause to search only where it contains a *nexus* between the items sought and the place to be searched."[14]  A mere statement by a police officer that probable cause exists based on the officer's own knowledge and training is insufficient to establish probable cause.[15]  A search warrant must allege specific facts to adequately support an invasion of a person's expectation of privacy.[16]

Upon issuance of a search warrant, a magistrate must have a reasonable belief that "an offense has been committed and the property to be seized will be found in a particular place."[17]  Satisfying a warrant's particularity requirement becomes challenging when the warrant is for digital information stored on electronic devices,

---

[11] 11 *Del.C.* §2370(a) (emphasis added).
[12] *State v. Felton*, 1991 WL 113337 (Del. Super. June 18, 1991) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)); *State v. Cooley*, 457 A.3d 352 (Del. 1983); *Ellison v. State*, 410 A.3d 519 (Del. Super. Ct. 1979); *State v. Wrightson*, 391 A.3d 227 (Del. Super. 1978); *State v. Prouse*, 382 A.2d 1359 (Del. 1978).
[13] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[14] *State v. Adams*, 13 A.3d 1162, 1173 (Del. Super. 2008).
[15] *State v. Cannon*, 2007 WL 1849022 at *6 (Del. Super. June 27, 2008).
[16] *Id.*
[17] *State v. Holden*, 2011 WL 4908360 at *3 (Del. Super. 2011) (emphasis added); *see also* 11 *Del. C.* § 2306 (delineating the requirement of search warrant applications).

like a cellular telephone, because of the "unprecedented volume of private information stored on [such] devices."[18]

There is no bright-line rule as to whether a warrant is general or overbroad. When a warrant includes more areas that lack sufficient probable cause than do, it is more likely a general warrant. A general warrant may include a lack of temporal limits, authorization to search areas without sufficient particularity, or probable cause.

The Supreme Court of Delaware also reiterated the United States Supreme Court's distinction between a general and overbroad warrant:

> Between a general warrant, which is invalid because it vests the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence, and an overly broad warrant, which "describe[s] in both specific and inclusive general terms what is to be seized," but "authorizes the seizure of items as to which there is no probable cause…" [A]n overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment. In contrast, the only remedy for a general warrant is to suppress all evidence obtained thereby.[19]

## ANALYSIS

## NEXUS

The CI provided Investigator Lerro with screenshots of a video call with Defendant where Defendant was in possession of a tan in color handgun that

---

[18] *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016) (citing *Riley v. California*, 134 S.Ct. 2473, 2494-95 (2014)).
[19] *Terreros v. State*, 312 A.3d 651, 668 (Del. 2024) (quoting *U.S. v. Yusef*, 461 F.3d 374, 393 n.19 (3d. Cir. 2006)).

Defendant was attempting to sell. Investigator Lerro knew Defendant was prohibited from possessing firearms.

In addition to the subscriber identifiers, IMEI number, and phone number associated with the phone, the search warrant sought the call logs, video call logs, text and multimedia messages from the black in color Apple iPhone recovered from Defendant from the time period of February 4, 2024 to February 6, 2024 because "it is reasonable to believe [Defendant] may have contacted other potential buyers who may be interested in purchasing the gun." It stands to reason that the CI was not the only person Defendant tried to sell the firearm to and evidence of Defendant's possession of the firearm while prohibited would be contained within such correspondence.

The search warrant also sought stored pictures, photographs, images and videos from the time period of February 4, 2024 to February 6, 2024 since Defendant was offering to sell the firearm, and it is reasonable to believe he would have taken photographs or videos of the firearms characteristics.

The search warrant's affidavit of probable cause contains a nexus between the crime of Possession of a Firearm by a Person Prohibited and each of the categories of data specified to be searched. The warrant does not authorize a top-to-bottom search of the data on Defendant's Apple iPhone, rather the search identified the specific areas of the phone to be searched, and the reason for searching those specific areas. The CI provided screenshots of a video call with Defendant where Defendant

7

displayed a tan in color firearm Defendant was attempting to sell to the CI, which Investigator Lerro identified as strikingly similar to the tan in color firearm recovered from the rear yard of 203 N. Poplar Street on February 6, 2024. The firearm recovered was reported stolen on February 4, 2024; thus, the temporal limitation of February 4, 2024, through February 6, 2024, in the search warrant was appropriate to assume that Defendant, much like anyone else selling items electronically, would photograph and/or take videos of the item being sold, here, the tan in color firearm, and that such documentation would be stored on Defendant's cell phone.

The above demonstrates that there was a clear nexus between the items sought and the search of Defendant's black in color Apple iPhone.

**THE WARRANT IS NOT A GENERAL OR OVERBOARD WARRANT**

The instant search warrant was temporarily limited to the period from February 4, 2024 to February 6, 2024. This 48 hour period was immediately preceding the defendant's arrest. This time period followed information from a confidential informant that the defendant was in possession of and trying to sell a tan in color handgun. The police, through the confidential informant, had a screen shot of the defendant holding the gun. The time period authorized by the warrant was limited in scope and passes constitutional muster given the information provided by the confidential informant. The items sought to be searched would reveal

communications between the defendant and the others which goes directly to the information that the police had regarding a screen shot of the defendant and gun and information that the defendant was trying to sell the gun.

This case is clearly distinguishable from *Christopher Wheeler v. State of Delaware*[20], *David Buckham v. State of Delaware*[21], and *Jose Terreros v. State of Delaware*[22], all of which are relied upon by the defendant in support of his position. In *Wheeler*, the search warrant allowed law enforcement to search the entire phone with no temporal limit.[23] The *Wheeler* court concluded the affidavit did not provide a sufficient nexus between the articulated probable cause and the authorization to search defendant's call-log, photos, and text messages.[24] Unlike *Wheeler* the instant search warrant has a temporal limit, the search was limited to specific areas of the phone, and there is a nexus between the articulated probable cause and the authorization to search the areas that were requested.

In *Buckham*, the affidavit allowed law enforcement to search the entire phone without a temporal limit.[25] In the instant case there is a temporal limit, and the affidavit does provide a sufficient nexus between the articulated probable cause and the authorization to search the items requested to be searched.

---

[20] 135 A.3d 282 (Del. 2016).
[21] 185 A.3d 1 (Del. 2018).
[22] 312 A.3d 651 (Del. 2024).
[23] *Wheeler,* 135 A.3d at 289.
[24] *Id.* at 304-07.
[25] *Buckham*, 185 A.3d at *6.

In *Terreros*, the Delaware Supreme Court found that the cell phone warrant in that case was overbroad.[26] In *Terreros*, the Court noted that even though the warrant identified specific categories of data, rather than referring to "any and all date," each category was preceded by "any and all" language with no temporal limitation.[27] The identified categories of data constituted a large portion of the total extractable data on the cell phone and included data beyond evidence other than Mr. Terreros internet search history which was all that was supported by the affidavit of probable cause.[28] Unlike *Terreros*, the instant affidavit as demonstrated herein supported the request to look into the areas of the phone that were requested. Additionally, unlike *Terreros*, there was a temporal limitation on the time to be searched. In short, unlike *Terreros*, there was probable cause to search the areas requested within the time frame requested.

For the above reasons Defendant's motion to suppress is DENIED.

**IT IS SO ORDERED**.

                                              _____

                                              Francis J. Jones, Jr., Judge

cc:    Original to Prothonotary

---

[26] *Terreros*, 312 A.3d 651 at 666-67.
[27] *Id.* at 668.
[28] *Id.*

10