**Ahkee FLONNORY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 513,2000.

Supreme Court of Delaware.

Submitted: Oct. 24, 2001.
Decided: Nov. 5, 2001.

Kevin J. O'Connell, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware, for Appellee.

Before, WALSH, HOLLAND and STEELE, Justices.

STEELE, Justice:

A Superior Court jury convicted Appellant, Defendant-below, Ahkee Flonnory of Possession with Intent to Deliver Cocaine and Conspiracy in the Second Degree. In this appeal, we reverse the judgment of the Superior Court because it erred in denying defense counsel's Motion to Suppress evidence that the police invalidly seized from Defendant's car in violation of the Fourth Amendment to the United States Constitution and Article I, Section 6 of the Delaware Constitution. We conclude that agents of the State may stop and detain an individual only when they have a reasonable and articulable suspicion of criminal activity. Because we find that the police failed to demonstrate a reasonable and articulable suspicion of criminal activity when they detained Appellant, any evidence then or later seized by the police from his car and resulting from the invalid detention and search was inadmissible.

## I.

On the morning of June 23, 1997, the Wilmington Police Department received a

tip from an anonymous caller alleging that an occupant of a gray automobile at the corner of 23rd and Lamotte Streets in Wilmington possessed an "illegal substance." The caller described not only the vehicle, but also gave the police the license tag number. When the police arrived they identified the vehicle described by the caller as a gray Oldsmobile Cutlass with a license number matching that given in the tip. The police observed Appellant Flonnory and Neimon T. Barbour "scrunched low," as the caller had described, in the front seat of the vehicle. The three Wilmington police officers at the scene approached the automobile. The officers testified at the suppression hearing that two of the officers positioned themselves at the driver and passenger doors of the vehicle respectively, while the third stood at the rear. One of the officers tapped on the driver's window and asked Flonnory and Barbour what they were doing. The two occupants of the car replied that they had just "woken up." When the officers continued to question them and asked whether they had any weapons or other contraband, Flonnory and Barbour stated that they did not. The police removed Flonnory and Barbour from the automobile and frisked them for weapons. At some point during this encounter, the police asked Flonnory and Barbour for identification. When none was produced, the officers asked for the vehicle registration and proof of insurance, neither of which the Appellant possessed.[1] They then searched the passenger compartment of the car. The officers discovered no weapons. However, during what the officers described as "a *Terry* search of the vehicle," one of the officers discovered several plastic packets that were later revealed to contain cocaine. Flonnory and Barbour were taken into custody and driven to the Wilmington Police Department.

The State charged Appellant Flonnory and his co-defendant, Barbour, with Possession with Intent to Deliver Cocaine, Conspiracy, Maintaining a Vehicle for Keeping Controlled Substances, and several motor vehicle offenses. In July 1999, counsel for Flonnory filed a Motion to Suppress. The judge presiding over the suppression hearing[2] denied the motion, stating that the police officers' confirmation of the anonymous caller's description of the vehicle provided probable cause for the officers to seize Flonnory and Barbour and conduct the inquiry and search that led to the discovery of the cocaine on the floor of the car.

At trial, the court dismissed the charge of Maintaining a Vehicle for Keeping Controlled Substances. In addition, the State entered a *nolle prosequi* on the motor vehicle charges. After a trial, a jury convicted Flonnory of the remaining two charges. This is the appeal from that conviction.

## II.

The United States Supreme Court held in *Terry v. Ohio*[3] that a police officer may seize an individual for an investigatory purpose of limited scope and duration only when that detention is supported by "a reasonable and articulable suspicion of

---

1. The record is unclear about whether the officers asked for Appellant's identification, vehicle registration, and proof of insurance before or after they removed Flonnory and Barbour from the car and searched them. However, the exact chronology of these events is irrelevant to our holding in this case.

2. In this instance, a different Superior Court Judge than that assigned for trial presided over the suppression hearing.

3. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

criminal activity."[4] A trial court's determination of whether the State possessed a reasonable and articulable suspicion before detaining an individual is an issue of both law and fact.[5] In this case, there are no significant disputes over the issues of fact. Therefore, we review *de novo* the decision of the Superior Court for error in the formulation and application of the law.[6]

■ The right of individuals to be free from unlawful searches and seizures is secured in Delaware by both the guarantee of an individual's right under the Fourth Amendment to the United States Constitution to be "secure in their persons, house, papers, and effects, against unreasonable searches and seizures"[7] and the nearly identical language of Article I, Section 6 of the Delaware Constitution.[8] We have held that the Delaware Constitution provides a greater protection for the individual than the United States Constitution in the determination of whether a seizure by the State has occurred.[9] In *Terry*, the United States Supreme Court held that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty" of an individual.[10] That Court clarified this standard in *Michigan v. Chesternut*[11] when it declared that a seizure occurs whenever the conduct of a police officer would "communicate to a reasonable person that he was not at liberty to ignore the police presence and go about his business."[12] Although the United States Supreme Court carved a significant exception to *Chesternut* in *California v. Hodari D.*,[13] we determined in *Jones v. State* that Article I, Section 6 of Delaware Constitution offered greater protection than the Fourth Amendment, requiring the Delaware courts to continue to apply a standard similar to that set forth in *Chesternut*.[14]

■ Thus, our focus must be on whether, and at what point, a reasonable person would have believed that he or she was not free to ignore a police presence.[15] In the case before us, there is uncontested evidence that three police officers approached the Oldsmobile in which Flonnory was sitting and that they took up posi-

4. *Id.* at 21, 88 S.Ct. 1868.

5. *Jones v. State*, Del.Supr., 745 A.2d 856, 860 (1999).

6. *Id.*

7. U.S. Const. amend. IV.

8. Del. Const. Art. I, § 6.

9. *Jones*, 745 A.2d at 863–64.

10. *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. 1868.

11. 486 U.S. 567, 108 S.Ct. 1975 (1988).

12. *Id.* at 569, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (quoting *United States v. Mendenhall* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.)).

13. 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In *Hodari D.*, the Supreme Court held that a show of authority by itself, even where a reasonable person would believe that he or she was not free to leave, does not give rise to a seizure of a person within the meaning of the Fourth Amendment. Although the police officers in that case lacked the requisite reasonable suspicion to detain the suspect in that case, even after Hodari D. fled at the officers' approach, the Court found that the resulting pursuit was not sufficient to communicate to the suspected individuals that they were not free to leave. The police did not seize the individuals for Fourth Amendment purposes until the officers used *physical restraint*. Thus, evidence discarded during the chase was not discovered as the result of an illegal search and the trial judge properly admitted it.

14. 745 A.2d at 867.

15. *Id.* at 869; *Quarles v. State*, Del.Supr. 696 A.2d 1334, 1336 (1997).

tions on three sides of the vehicle. A reasonable person in Flonnory and Barbour's situation could only have believed that the conduct of the officers communicated to them that they were not at liberty to go about their business.[16] Thus, at the moment that the officers approached in this manner, they had detained the individuals in the car, which constituted a seizure of the occupants' persons under Article I, Section 6 of the Delaware Constitution.

## III.

Having established that the actions of the police constituted a seizure of Appellant's person, this Court must next determine whether or not the police possessed the reasonable and articulable suspicion necessary to conduct an investigatory stop under both the Fourth Amendment of the United States Constitution and Article I, Section 6 of the Delaware Constitution.[17] To determine whether a reasonable suspicion exists, we must "examine the totality of the circumstances surrounding the situation 'as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'"[18] In this instance, the totality of the circumstances fails to suggest the presence of the reasonable and articulable suspicion required for a police intrusion.

At the conclusion of the suppression hearing, the judge presiding over the proceeding noted the existence of a "legion of cases" in which courts have found that an anonymous tip standing alone does not give rise to the reasonable suspicion required for a *Terry* stop.[19] Nevertheless, the judge went on to decide that the police were not in violation of the Fourth Amendment or Article I, Section 6 because the circumstances provided the reasonable suspicion necessary for a seizure. Specifically, the judge cited the fact that the officers were able to confirm the anonymous caller's description of the vehicle and its occupants. He found that this confirmation supported the conclusion that the caller's allegation of illegal activity was somehow more reliable and thus gave the police the reasonable suspicion necessary to detain Flonnory and Barbour. However, the simple confirmation of readily observable facts does not enhance the reliability of an anonymous tip to the level required for a finding of reasonable suspicion. In a decision handed down after the judge made his ruling at the suppression hearing, the United States Supreme Court held in *Florida v. J.L.*[20] that an anonymous tip that provides the police with no predictive information that they may use to assess the reliability and knowledge of an informant is insufficient to raise reasonable suspicion.[21]

16. See *Quarles*, 696 A.2d at 1337. In *Quarles*, the police seized the defendant when three officers positioned themselves on both sides of the suspect. This Court held that Quarles remained at the scene as "an act of submission to a show of authority by the police."

17. Appellant also contends that the State violated 11 Del. C. § 1902(a) which authorizes the police to conduct a stop if an officer has "reasonable ground" to suspect that an individual has *committed* or *will commit* a crime. We have held that "reasonable ground" has the same meaning as reasonable and articulable suspicion and is thus subject to the same

analysis as Del. Const. art. I, § 6. *Jones*, 745 A.2d at 861.

18. *Woody v. State*, Del.Supr., 765 A.2d 1257, 1263 (2001) (quoting *Jones*, 745 A.2d at 861).

19. *See e.g. Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

20. 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

21. *Id.* at 271–72, 529 U.S. 266, 120 S.Ct. 1375.

In *J.L.* the police received an anonymous tip that a black male wearing a plaid shirt, standing at a particular bus stop, was engaged in the illegal activity of carrying a handgun.[22] Police officers responding to the call observed three black males at the named bus stop, one of whom was wearing a plaid shirt.[23] The officers did not see a firearm or observe any illegal activity by the three men.[24] Nevertheless, one of the officers frisked J.L. and discovered a concealed handgun.[25] The Supreme Court found that while the tip served the limited purpose of helping the police identify the person the caller meant to accuse, the tip did not demonstrate that the caller had any knowledge of concealed criminal activity.[26] The Court held that the reasonable suspicion required for an investigatory stop must be based on a reliable assertion of illegality.[27] Because the tip was based only on the readily observable location and appearance of the suspect, the police lacked the necessary indicia of reliability that would suggest that the caller had inside knowledge of illegal conduct sufficient to provide the police with the reasonable suspicion required before detaining the suspect.[28]

■ As in *J.L.*, the description of Flonnory, Barbour, and the vehicle they occupied would have been readily observable to

anyone who saw the appellant. The caller provided the police with only a description of the suspects and gave no other information that would have indicated to the officers that the informant possessed an inside knowledge of illegality. Furthermore, upon arriving at the scene, the police failed to observe any illegal activity that, standing alone, would have warranted detaining Flonnory and Barbour. Because the anonymous tip lacked an indicia of reliability and was unsupported by independent police corroboration of present or predicted future criminal activity, the police were without the reasonable suspicion necessary to approach Flonnory's vehicle in a manner communicating to him that he was not at liberty to leave.

■ The judge also indicated at the suppression hearing that Flonnory's lack of identification, vehicle registration, and proof of insurance gave rise to the reasonable suspicion necessary to conduct the *Terry* search that led to the discovery of the cocaine packets. However, this Court has held that "[a]n illegal stop cannot be justified by circumstances that arise following its initiation."[29] The officers in the instant case did not discover and had no reasonable basis to believe that they would discover that Flonnory lacked identifica-

22. *Id.* at 266, 529 U.S. 266, 120 S.Ct. 1375.

23. *Id.*

24. *Id.*

25. *Id.*

26. *Id.* at 272, 529 U.S. 266, 120 S.Ct. 1375.

27. *Id.*

28. *Id.* at 270–72, 529 U.S. 266, 120 S.Ct. 1375; *cf. Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (a tip asserting that a woman was carrying cocaine, but describing the suspect *and* predicting that

she would be wearing specific clothes, leaving her apartment at a specific time and traveling to a named motel, provided reasonable suspicion for an investigatory stop once the caller's predictions had been confirmed by police observation because the caller's ability to predict the appearance and movements of the suspect provided an indication of inside knowledge of illegal activity).

29. *Woody,* 765 A.2d at 1263; *see also Jones,* 745 A.2d at 874 (where an officer attempts to seize someone in the absence of a reasonable articulable suspicion, the suspect's actions stemming from the attempted seizure may not be used to manufacture the reasonable suspicion the police initially lacked).

tion, vehicle registration, and proof of insurance until after the initial seizure had already taken place. Therefore, it is improper for the police and the courts to rely upon this information to provide the reasonable suspicion that would justify the initial detention.

 Finally, the State argues that the police were entitled to conduct a *Terry* search of Flonnory, Barbour, and the passenger compartment of the vehicle in the interest of officer safety. While this Court has repeatedly acknowledged that "officer safety is 'both legitimate and weighty,' "[30] an officer needs to demonstrate an independent articulable suspicion appropriate to the circumstances to proceed with a *Terry* search.[31] In this instance, Officer Kutch stated at the suppression hearing that he feared for his safety. However, on cross-examination, he could offer no basis for that assertion. Therefore, the state cannot properly assert that the need to protect the officers met the requirements of reasonable suspicion necessary to conduct a search of the vehicle and its occupants.

## IV.

In conclusion, the record clearly demonstrates that the police officers approached the defendant in manner that constituted a seizure of the person under Article I, Section 6 of the Delaware Constitution. Once this seizure occurred, the State had the duty to establish that reasonable suspicion existed for that detention in compliance with the Fourth Amendment to the United States Constitution, Article I, Section 6 of the Delaware Constitution, and Title 11, Section 1902 of the Delaware Code. The State's reliance on an anonymous tip that offered no indicia of reliability was insuffi-

cient to meet that burden. Because the State's later discovery that Appellant lacked identification, vehicle registration, and proof of insurance was predicated on the initial illegal detention, the State could not then offer it as a means of establishing reasonable suspicion. In short, the police would not have discovered any evidence of illegality but for the illegal seizure. Therefore, the Superior Court erred in denying the Motion to Suppress and ultimately admitting the evidence of cocaine found on the floor of Appellant Flonnory's vehicle. Accordingly the judgment of the Superior Court is REVERSED and REMANDED for proceedings consistent with this opinion.

---

**30.** *Jones,* 745 A.2d at 872 n. 78 (quoting *United States v. Johnson,* 7th Cir., 170 F.3d 708, 718 (1999)).

**31.** *Jones,* 745 A.2d at 872 n. 78.