**SUPERIOR COURT**
OF THE

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

January 30, 2023

Jillian Schroeder, Esquire
Deputy Attorney General
820 North French Street
Wilmington, DE 19801

Monika G. Germono, Esquire
Assistant Public Defender
820 North French Street
Wilmington, DE 19801

Re:   *State of Delaware v. Lance Weimer*
      **Case ID No. 2203013872**

Dear Counsel:

This is the Court's determination following the suppression hearing in the above matter on January 27, 2023.  For the following reasons, Defendant's Motion to Suppress is **DENIED**.

The facts are relatively straightforward.  On March 25, 2022, after 8:00 p.m., three officers from Wilmington police were operating an unmarked police vehicle.  While patrolling what they consider to be a high-crime area at West 7th Street and North Tatnall Street, the officers heard six gunshots in the area.  The officers were able to locate the shots via ShotSpotter.

In response, the officers turned eastbound onto West 7th Street and observed Defendant walking southbound on North Tatnall Street, wearing a black jacket, with his left arm tight to the left side of his body while his right arm was moving with a normal gait.  Det. MacNamara testified that Defendant was walking at a hurried pace and looking back toward the location of the officers and did so twice before entering a vestibule located at 606 North Tatnall Street.  While in their vehicle, the officers observed that Defendant was pinning his body tight against the door of that location, without attempting to knock or enter the apartment.

Based on experience and training, the officers believed that Defendant's

1

behaviors matched the characteristics of an armed gunman.[1] Accordingly, the officers exited their vehicle and approached Defendant. Detective MacNamara asked to speak to Defendant while SPO Phelps said, "show me your hands." Rather than place his hands up, Defendant immediately appeared to place both hands on his knees and showed his hands in that manner. Police conducted a pat down of Defendant's person for the suspected firearm and felt the outline of what felt to be a semi-automatic handgun in the left pocket of his jacket. The officers found a gun in Defendant's left jacket pocket and found a bullet in his right back pants pocket. Police also found 48 bags of suspected heroin and marijuana in Defendant's right jacket pocket.[2] Defendant was charged with Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Carrying a Concealed Deadly Weapon, Resisting Arrest, Illegal Possession of a Controlled Substance, and Possession of Marijuana.[3]

## Standard of Review

The United States and Delaware Constitutions provide that people must be free in their persons from unreasonable searches and seizures.[4] A seizure occurs whenever the conduct of an officer would "communicate to a reasonable person that he was not at liberty to ignore the police presence and go about his business."[5] When police officers have "reasonable articulable suspicion" that the suspect has committed or is afoot to commit a crime, the police may seize "an individual for a short period of time" to investigate.[6] Here, the challenge is to whether the officers

---

[1] Detective MacNamara testified his experience included thirteen years of law enforcement experience to include characteristics of an armed gunman training at the Police Academy in 2010, a Firearms Task Force offered through the U.S. Attorney's Office in 2013, and the Metro Washington Police Department in 2017.

[2] Defendant's Motion to Suppress, at 5.

[3] D.I. 19.

[4] U.S. Const. amend. IV; Del. Const. Art. I, § 6. 11 *Del. C.* § 1902 also authorizes a peace officer to stop (seize) a suspect and demand their name, address, business abroad, and destination when there is no probable cause for an arrest as long as the officer has reasonable suspicion of their criminal activity. If the suspect has not provided their identification, or the peace officer is not satisfied with their explanations regarding their actions, the officer may detain (seize) the suspect to ask more questions or to investigate.

[5] *Flonnory v. State*, 805 A.2d 854, 857 (Del. 2001) (citing *Michigan v. Chesternut*, 486 U.S. 567 (1988)) ("[W]e determined . . . that Article I, Section 6 of Delaware Constitution offered greater protection than the Fourth Amendment [of the United States Constitution], requiring the Delaware courts to continue to apply a standard similar to that set forth in [*Michigan v.*] *Chesternut*.").

[6] *State v. Murray*, 213 A.3d 571, 578 (Del. 2019) (citing *Flowers v. State*, 195 A.3d 18, 24 (Del. 2018)).

had reasonable articulable suspicion. Thus, this Court "must examine the totality of the circumstances surrounding the situation 'as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'"[7] "In determining whether there was reasonable suspicion to justify a detention, the court defers to the experience and training of law enforcement officers."[8]

Here, both sides agree that officers seized Defendant when they approached and ordered him to show his hands.[9] Both sides also point to *Flowers v. State*[10] and *State v. Murray*[11] for guidance. Following the rationale in *Flowers* and *Murray*, the Court finds the State meets its burden that no constitutional violation occurred here.

---

[7] *Id.* at 579 (Del. 2019) (citing *Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001)).

[8] *Flowers v. State*, 195 A.3d 18, 27 (Del. 2018).

[9] Defendant's Motion to Suppress, at 6–8; the State's Response, ¶ 3. The Court agrees with both parties because the officers' conduct—ordering Defendant to show his hands—would "communicate to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Flonnory*, 805 A.2d, at 857 (Del. 2001) (citing *Michigan v. Chesternut*, 486 U.S. 567, 108 S. Ct. 1975 (1988)).

[10] In *Flowers v. State*, the police received a tip that there was a subject at 7th and West Streets (a high-crime area), wearing a Phillies hat and shirt, armed with a gun in his waistband. Police officers found a man matching the description of the suspect. The defendant was standing next to the man. After the officers observed that the defendant turned his body and reached for a rectangular object in his waistband and had his fingers wrapped around the object, one of the officers ordered both men to the ground, and the other officer conducted a pat-down on the defendant and found a firearm. The Supreme Court found that the officers had reasonable, articulable suspicion because (1) the officers observed the defendant's behavior that justified detention and pat-down; and (2) the area was a high-crime area, where the officer made other gun arrests that same night. *Flowers v. State*, 195 A.3d 18 (Del. 2018).

[11] In *State v. Murray*, while patrolling a high-crime area, a police officer observed the defendant walking with another man. The defendant was swinging his left arm naturally while holding his right arm tight to his body. When the defendant noticed the presence of the officers, the defendant took a "stutter step, where he kind of stopped in his tracks." Then, "he looked forward and then scanned and looked back." The officer, wearing a vest with POLICE in bold white letters, exited a police vehicle. The defendant stopped and hid behind another man; at the same time, he began "turning and blading" the right side of his body away from the officer. The officer asked the defendant to stop and show his hands. The Supreme Court found that the officer was able to point to specific and articulable facts giving rise to his suspicion that the defendant was carrying a concealed deadly weapon. These facts included the high-crime area, stutter-stepping, the unnatural canting and blading that the officer described as well as the defendant scanning the area and looking back upon seeing the officer. *State v. Murray*, 213 A.3d 571 (Del. 2019).

The police heard six gunshots in a high crime area.[12] They observed that Defendant was walking at a hurried pace while looking at the location of the unmarked police vehicle. Defendant was having his left arm tight to the left side of his body while his right arm was moving with a normal gait. He looked back twice at the officers. They observed Defendant was pinned against a door of a vestibule in a manner that did not suggest he was trying to open or knock on the door. Since the determination of the existence of reasonable articulable suspicion does not have to rule out the possibility of innocent conduct,[13] Defendant's contention that his behavior could just as easily have been interpreted as a person walking away from the earlier heard gunshots is unpersuasive.

Also unpersuasive is the video evidence presented by both sides before and after Defendant was detained. The evidence prior to the detention that shows Defendant walking at a normal speed does nothing to the analysis because this video shows Defendant's behavior before the police were visible to Defendant and vice versa. The testimony that matters is their observations. No video depicts the fifteen seconds when these observations were made.

So, too, the evidence after the detention shows the officers' responses to neighbors' recording them. This is insufficient to change the outcome or undermine the officer's credibility. The testimony of Detective MacNamara is credible. Thus, viewed through the eyes of a reasonable, trained police officer in similar circumstances, the officers' subjective interpretation of these facts amounts to reasonable, articulable suspicion that Defendant exhibited the characteristics of an armed gunman walking away from an area where gunshots were heard. There is no constitutional foul. Therefore, Defendant's Motion to Suppress is **DENIED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

cc:     Prothonotary

---

[12] *See State v. Rollins*, 922 A.2d 379, 385 (Del. 2007) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.").

[13] *See Murray*, 213 A.3d, 579 (citing *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).