**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Motion to Suppress Submitted and Decided: March 31, 2023
Motion for Reargument Submitted: April 11, 2023
Motion for Reargument Decided: April 21, 2023
Corrected:  April 24, 2023

James J. Haley, Jr., Esquire
FERRARA & HALEY
1716 Wawaset Street
Wilmington, Delaware 19806

Karin M. Volker, Esquire
Deputy Attorney General
DEPARTMENT OF JUSTICE
Carvel State Office Building
820 N. French Street, 7th Floor
Wilmington, Delaware 19801

RE:   *State v. Brandon Spencer*
        ID No. 2207011778
        *Decision on Defendant's Motions to Suppress and for Reargument*

Dear Counsel:

The Court provides this Letter Opinion in lieu of a more formal written decision resolving Defendant Brandon Spencer's motion for reargument (D.I. 21) of the Court's bench ruling on his motion to suppress (D.I. 13).  For the reasons stated below, both motions are **DENIED.**

## I.  MR. SPENCER'S CHARGES

Mr. Spencer has been charged with five counts of Possession of a Firearm or Ammunition by a Person Prohibited; one count of Criminal Contempt of a Domestic Violence Protective Order; one count of Malicious Interference with Emergency

Communication; and one count of Offensive Touching.[1]

## II. FACTUAL[2] AND PROCEDURAL BACKGROUND

On the night of July 22, 2022, officers were called to 16 Imperial Drive, Wilmington, Delaware for an alleged physical domestic incident.

Earlier that evening, Brandon Spencer and his girlfriend Kyley Spencer were driving back to their shared residence at 16 Imperial Drive, when they began to argue. That led Mr. Spencer to exit the car.

Upon Ms. Spencer's return home she began packing her belongings. When Mr. Spencer arrived on foot, the argument reignited to an intensity that Ms. Spencer found it necessary to contact the County police department's non-emergency

---

[1]    D.I. 3.

[2]    As this Court recently explained:

> The suppression hearing judge's first responsibility is to determine the historical facts from the testimony presented, physical or documentary evidence, and inferences from other facts. Among other things, the trial judge, sitting as the finder of fact at a pretrial suppression hearing, determines witness credibility. And when presented with differing accounts of historical facts, it is the suppression hearing judge's role to resolve the conflicts in witnesses' testimony and weigh their credibility. To do so, the judge might consider any existing objective evidence. She might also consider whether certain proffered testimony is so inconsistent or implausible on its face that a reasonable factfinder would not credit it. In the end though, when weighing the evidence and finding facts, the suppression hearing judge may reach any inferences, deductions, and conclusions to be drawn from the evidence.

*State v. Jackson*, 2022 WL 18401412, at *2 (Del. Super. Ct. Dec. 28, 2022) (cleaned up). The Court did precisely this when it denied Mr. Spencer's suppression motion from the bench after a full hearing. And this now-written factual recitation was derived employing these same standards of examination of the hearing evidence.

number. At some point during the argument inside the residence, Mr. Spencer wielded a black rifle. Ms. Spencer recorded this on her cellphone. A neighbor eventually called 911 and officers arrived at the residence around 1:00 a.m. On the scene, officers spoke outside with Ms. Spencer while Mr. Spencer remained inside.

Ms. Spencer told officers that Mr. Spencer had rifles in the residence even though he was a person prohibited from possessing firearms. She informed them, too, that she had a video of Mr. Spencer holding a rifle.

Officers arrested Mr. Spencer when he came outside. They then secured the residence by posting multiple armed officers there. While securing the residence, police observed, in plain view, a holstered black Sig Sauer handgun located on top of a dresser in the front bedroom.

At one point thereafter, while awaiting a warrant, officers went into the residence to retrieve Ms. Spencer's cellphone so that she could show officers the video of Mr. Spencer holding the black rifle. Upon entering the residence for the second time, officers almost immediately located Ms. Spencer's cellphone on a table near the front door, yet they continued into a bedroom before turning around and exiting.

Once officers gave Ms. Spencer her cellphone, she showed them the video of Mr. Spencer. During this latter interaction with officers, Ms. Spencer went back and

forth between being cooperative and being combative. For instance, first Ms. Spencer wanted to show the video of Mr. Spencer, then she wanted to withhold the video, then finally she showed the video. Later, while being interviewed by a male officer, Ms. Spencer began to scream and gesticulate at the male officer and demanded a female officer be present, shouting she would only deal with a female officer from then on.

Ms. Spencer continued to scream and spew profanities when she was informed she would not be allowed to return or even re-enter 16 Imperial Drive immediately, and tromped through her block yelling (again lacing her speech with profanities) that she shouldn't have called the police in the first place.

After her excitement subsided some—which was around 2:00 a.m.— Ms. Spencer drove away for a bit. Meanwhile, officers were applying for and eventually received a nighttime search warrant for the residence. In relevant part, that affidavit stated:

> Your Affiant requests that a Night Time [sic] Search Warrant be issued due to the firearms being readily accessible and Brandon being a person prohibited. Your Affiant is aware that Kyley has been reluctant to be co-operative during the investigation going back and forth on providing evidence and continuing statements. Due to Kyley residing at 16 Imperial Your Affiant believes that exigent circumstances exist to protect the integrity of evidence relating to this incident.[3]

---

[3] Mot. to Suppress, Ex. A ("Affidavit") ¶ 9 (D.I. 13).

That warrant was executed around 4:00 a.m. Officers finished the search around 5:00 a.m., and Ms. Spencer returned to the residence at approximately 5:30 a.m.

On March 31, 2023, the Court conducted a hearing on Mr. Spencer's suppression motion. The Court denied such from the bench. Mr. Spencer immediately moved for reargument of the Court's denial of his motion to suppress.[4] That reargument motion rehashed arguments made in the motion to suppress with additional case citations.[5]

### III. PARTIES' CONTENTIONS

#### A. MR. SPENCER'S MOTION TO SUPPRESS

Mr. Spencer made two claims in his suppression motion. First, Mr. Spencer says that evidence via the nighttime search warrant must be suppressed because that warrant should not have been issued. Specifically, he insists there was no exigency supporting the grant of a nighttime search warrant.[6] In Mr. Spencer's view, the residence was "secured, guarded by the police, and presented no risk of 'the escape or removal of the person or thing to be searched for.'"[7] As he puts it, no exigency

---

[4]   Mot. for Reargument ¶¶ 1-7 (D.I. 21).

[5]   *Id.*

[6]   Mot. to Suppress ¶ 9.

[7]   *Id.* (quoting DEL. CODE ANN. tit. 11, § 2308 (2022)).

existed that made it necessary to conduct the search at 4:00 a.m. instead of waiting until 6:00 a.m.—"[t]he convenience of the New Castle County police was not an exigent circumstance."[8] According to Mr. Spencer, there could be no real fear from Kyley Spencer's conduct because she was not allowed back in the residence and the police could hold it as long as they wished—or at least until daytime broke.[9]

Second, Mr. Spencer argues the execution of the warrant was wrongful because, per the penned entry on the Evidence Inventory Worksheet, the search started at 3:57 a.m. which was three minutes before the time written into the warrant.[10]

In his pre-hearing reply brief, Mr. Spencer first asserts he was entitled to reverse-*Franks*[11] relief because the affiant must have omitted information[12] in the warrant application—to him, there are no facts in the warrant or this situation generally that support exigency.[13] Mr. Spencer next asserts that a previous non-

---

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 10.

[11] *Franks v. Delaware*, 438 U.S. 154 (1978) (allowing a criminal defendant to challenge evidence collected on the basis of a warrant granted on false statements of fact).

[12] At the hearing, Mr. Spencer changed course and claimed the warrant affiant was untruthful when he authored and averred to the exigency in the warrant application. In other words, this morphed into a direct *Franks* challenge.

[13] Reply Br. ¶¶ 8-10 (D.I. 19).

evidence bearing entry into the home should prompt exclusion of the items seized upon execution of the search warrant later obtained.[14]

In his motion for reconsideration, Mr. Spencer recycles his arguments that: (1) no valid basis existed for the issuance of a nighttime search warrant; and (2) the warrant application's averments that some exigency existed were false.[15]

## B. THE STATE'S OPPOSITION

The State contends the affidavit contained sufficient information to justify invocation of 11 *Del. C.* § 2308 and issuance of a nighttime search warrant.[16] Specifically, "that Ms. Spencer in her reluctance and uncertainty of her position might attempt to remove or destroy evidence maintained in the home," in part, represented an exigency.[17] Additionally the State contends that any discrepancy between the time noted in the evidence inventory worksheet and the time listed on the warrant is of no concern because "no property was located until after 4:00 am" and "the officer's watch may not have been synchronized to the Magistrate's clock or . . . the officer may have filled the form out in anticipation of the warrant being

---

[14]  *Id.* ¶ 13.

[15]  Mot. for Reargument ¶¶ 1-7.

[16]  State's Response at 7 (D.I. 18).

[17]  *Id.*

signed . . . ."[18]  The State contends there is no case in Delaware addressing this particular situation but points to cases outside of Delaware for support that the timing error does not invalidate the search.[19]

## IV.  STANDARD OF REVIEW

### A. MOTION TO SUPPRESS – WARRANT CHALLENGES

On a motion to suppress contesting the validity of a search warrant, the defendant shoulders the burden of establishing that the challenged search or seizure was unlawful.[20]  And he must establish by a preponderance of the evidence that he is entitled to relief on the bases he argues.[21]

Both the United States and Delaware Constitutions provide that a search

---

[18]  *Id.* at 9.

[19]  *Id.* at 9-11.

[20]  *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Ct. 2005), *aff'd*, 903 A.2d 288 (Del. 2006); *cf. McAllister v. State*, 807 A.2d 1119, 1123 (Del. 2002) (State bears the burden of demonstrating the existence of an exception to the warrant requirement); *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001) ("Despite some arguable earlier confusion in the Delaware case law over which party bears the burden of proof on a motion to suppress evidence seized during a *warrantless* search, the rule in Delaware should now be clear. The State bears the burden of proof." (emphasis in original) (citations omitted)).

[21]  *Sisson*, 883 A.2d at 875; *see State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Ct. Oct. 14, 2010) ("The burden of proof on a motion to suppress is proof by a preponderance of the evidence." (citation omitted)); *see also United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings" is "by a preponderance of the evidence." (citation omitted)).

warrant may be issued only upon a showing of probable cause.[22]

"It is well-settled that the Court must employ a 'four-corners' test to determine whether an application for a warrant demonstrates probable cause."[23] Under that test, a reviewing court must discern whether the supporting affidavit "set[s] forth sufficient facts on its face for a judicial officer to form a reasonable belief that an offense has been committed and that seizable property would be found in a particular place."[24] In addition to being supported by probable cause, a search warrant must "be as particular as possible."[25] Specifically, "[t]he warrant must describe the things to be searched with sufficient particularity and be no broader than the probable cause on which it is based."[26]

The judicial officer who made the initial finding of probable cause is owed

---

[22] *See* U.S. CONST. amd. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); DEL. CONST. art. I, § 6 ("The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.").

[23] *Sisson*, 883 A.2d at 876 (citing *Pierson v. State,* 338 A.2d 571, 573 (Del. 1975)).

[24] *Id.* (internal quotations and citations omitted).

[25] *Taylor*, 260 A.3d at 613.

[26] *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016) (citation omitted); *see Taylor*, 260 A.3d at 616 (rejecting warrant as not sufficiently limited because it "authorized a search of 'any and all data' on the smartphones[,]" instead of "limit[ing it] to smartphone data tied specifically to the probable cause supporting the warrant").

great deference, and such a finding won't be "invalidated by a hypertechnical, rather than a common sense, interpretation" of the supporting affidavit.[27] And, the reviewing court must view the application "as a whole and not on the basis of its separate allegations."[28]

Mr. Spencer does not challenge the probable cause averments or findings supporting the warrant executed on 16 Imperial Drive. Yet the standards of review for the probable cause averments and a magistrate's findings are applied just the same when addressing the statute-grounded challenge he brings.[29]

## B. MOTION TO SUPPRESS – NIGHTTIME SEARCH WARRANT

The Delaware Criminal Code imposes an additional requirement to obtain authorization to search a home between the hours of 10:00 p.m. and 6:00 a.m.[30] Under 11 *Del. C.* § 2308, the judicial officer authorizing the search warrant must be "satisfied that [the nighttime search warrant] is necessary in order to prevent the escape or removal of the person or thing to be searched for . . . ."[31] "Even when a

---

[27] *Cooper v. State*, 228 A.3d 399, 404 (Del. 2020) (quoting *Jensen v. State,* 482 A.2d 105, 111 (Del. 1984)).

[28] *Jensen,* 482 A.2d at 111 (citations omitted).

[29] *Scott v. State*, 2007 WL 539650, at *2 (Del. Feb. 22, 2007) (citing *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).

[30] *See* DEL. CODE ANN. tit. 11, § 2308 (2022).

[31] *Id.* ("A search warrant shall not authorize the person executing it to search any dwelling house in the nighttime unless the judge, justice of the peace or magistrate is satisfied that it is necessary

search is supported by probable cause and a warrant has been obtained, the search may not be conducted at night absent a showing of exigent circumstances which make it necessary to conduct the search at night."[32]

In reviewing a nighttime search warrant the reviewing court "must apply a 'four-corners' test to the affidavit" in the same manner a reviewing court analyzes a non-§ 2308 search warrant affidavit.[33]

### C. MOTION FOR RECONSIDERATION[34]

Superior Court Civil Rule 59(e) (made applicable to criminal cases pursuant to Superior Court Criminal Rule 57(d))[35] permits the Court to reconsider its findings of fact, conclusions of law, or judgments.[36] It is well-settled that Rule 59(e) relief is

---

in order to prevent the escape or removal of the person or thing to be searched for, and then the authority shall be expressly given in the warrant. For purposes of this section the term 'nighttime' shall mean the period of time between 10:00 p.m. and 6:00 a.m.").

[32] *Hanna v. State*, 591 A.2d 158, 162 (Del. 1991).

[33] *Scott*, 2007 WL 539650, at *2.

[34] Mr. Spencer titles his latest application a "motion for reconsideration." D.I. 21. But no matter the label affixed, Mr. Spencer's is a motion for reargument under this Court's rules. *State v. Brown*, 2019 WL 3249402, at *1 n.11 (Del. Super. Ct. July 18, 2019).

[35] *See Haskins v. State*, 2008 WL 644200, at *1 (Del. Mar. 11, 2008); *State v. Zachary*, 2013 WL 5783388, at*1 n.1 (Del. Super. Ct. Sept. 23, 2013).

[36] Super. Ct. Crim. R. 57(d) ("In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court."); Super. Ct. Civ. R. 59(e) (providing a vehicle for motions for reargument of the Court's decisions). *See Bd. of Managers of the Del. Crim. Just. Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Ct. Jan. 17, 2003), *aff'd in part*, 840 A.2d 1232 (Del. 2003).

appropriate only if the Court overlooked a controlling precedent or legal principle, or the Court misapprehended the law or facts such that it would have affected the outcome of the underlying decision.[37]   It is equally well-settled that a motion for reargument is not a device for rehashing arguments already presented *or* for raising new arguments.[38]

## V.   DISCUSSION

Mr. Spencer contends that the evidence gathered via the nighttime search warrant should be suppressed because:  (1) officers earlier made what he suggests was an  unauthorized entry into and search of Mr. Spencer's residence; (2) there was no exigency justifying a nighttime search warrant; and, (3) he believes the officers began searching the residence before the search warrant was issued.

### A. THE BRIEF PRE-WARRANT ENTRY INTO THE RESIDENCE PRODUCED NO EVIDENCE AND DOES NOT SOUR THE LATTER SEARCH.

At the suppression hearing, Mr. Spencer clarified that in addition to the 4:00 a.m. warrant-authorized search, he was challenging an earlier entry during which officers went in the residence to retrieve Ms. Spencer's cellphone and then continued

---

[37]   *See Brown*, 2019 WL 3249402, at *2 (setting forth the bases for reargument of a decision in a criminal matter).

[38]   *State v. Abel*, 2011 WL 5925284, at *1 (Del. Super. Ct. Nov. 28, 2011) ("It is well settled that a motion for reargument is not an opportunity for a party to revisit arguments already decided by the Court or to present new arguments not previously raised." (citation omitted)).

further into the residence.[39] There was no evidence seized during this incursion therefore there is no direct evidence therefrom to exclude. Nor is there any information or observation gleaned from the complained-of incursion that made its way into the search warrant application. Indeed, this entry was made while police were waiting on presentment and issuance of the now-challenged warrant. Nonetheless, argues Mr. Spencer, notions of justice demand that the unauthorized conduct should trigger exclusion of the evidence gathered from the later search and warrant-authorized seizures of the firearms in the home. Not so.

The remedy for a search-and-seizure violation is the suppression of the evidence actually obtained (or derived) from *that* unlawful search or seizure.[40] Because there was no evidence obtained from the allegedly unlawful pre-4:00 a.m. entry there is nothing to suppress therefrom and the Court will not provide a remedy for that alleged violation via exclusion of evidence from a later wholly-unaffected separate search.[41]

---

[39] Suppression Hr'g, Def.'s Ex. 1 (body-worn camera from July 22, 2022).

[40] *Dorsey v. State*, 761 A.2d 807, 821 (Del. 2000).

[41] *State v. Upshur*, 2011 WL 1465527, at *23 (Del. Super. Ct. Apr. 13, 2011) ("Application of the exclusionary rule requires, at a minimum, that there be some causal connection between the constitutional violation and the seizure of the evidence sought to be suppressed."); *see Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (finding suppression of evidence not be a proper remedy when "[w]hether th[e] preliminary misstep had occurred *or not*, the police would have executed the

## B. *FRANKS* IS NOT IMPLICATED.

Mr. Spencer argues *Franks* applies here because either additional facts supporting exigency were missing or the affiant's averments that an exigency existed were false.[42]

*Franks* is animated when "a defendant makes a substantial preliminary showing that (1) the affiant made a false statement in the warrant either knowingly and intentionally, or with reckless disregard for the truth and (2) the allegedly false statement is necessary to the finding of probable cause . . . ."[43]

"Under *Franks*, a search warrant will only be voided, and the fruits of the search excluded, if after the hearing, the defendant proves by a preponderance of the evidence 'that the false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause.'"[44]

Mr. Spencer uses *Franks* to challenge the § 2308 averments—that is, he says that the affiant's § 2308 averment was a false statement made knowingly,

---

warrant they had obtained, and would have discovered the gun and drugs inside the house" (emphasis in original)).

[42]  Reply ¶¶ 8-10; Mot. for Reargument ¶ 7.

[43]  *State v. Campbell*, 2015 WL 5968901, at *7 (Del. Super. Ct. Oct. 5, 2015) (citing *Franks*, 438 U.S. at 154).

[44]  *Id.* (quoting *Franks*, 438 U.S. at 155).

intentionally and with reckless disregard for the truth so its excision is required.[45]

And, because that averment was necessary to the finding required for a nighttime search warrant to be issued under § 2308, the warrant fails and evidence gathered under its authority must be suppressed.[46]

In making this argument, Mr. Spencer confuses exigent circumstances for a warrantless seizure with exigent circumstances justifying a nighttime search. He posits that because the police had locked down the house, Ms. Spencer could not have possibly entered it, and thus there was no exigency justifying the nighttime search warrant.[47] The officers did in fact prohibit Ms. Spencer from entering the house. But rightly, they did so only for the limited period it took them to secure a search warrant.

In Constitutional terms, when the police take control of a house and bar entry to an occupant they have no doubt seized the house and the protections against unreasonable searches and seizures under Article 1, Section 6 of the Delaware Constitution, and the Fourth Amendment to the United States Constitution are

---

[45]  Reply Br. ¶¶ 8-10.

[46]  *Id.*

[47]  *Id.* ("Kyley Spencer was barred from entering. She was told to leave, and did so.").

implicated.[48]   And it's been long understood that normally such police actions are reasonable only when taken pursuant to a warrant or when an exception to the warrant requirement applies.[49]

The United States Supreme Court in *Illinois v. McArthur* recognized that such a "seizure" can be reasonable if engaged and limited to the time it takes officers to actively obtain a search warrant.[50] There, the Court found the holding of a premises was reasonable because (1) the "police had probable cause to believe that [the defendant]'s home contained evidence of a crime," (2) the police had "good reason to fear that, unless restrained, [the defendant] would destroy the [evidence] before they could return with a warrant," (3) police "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy" by "neither search[ing] the trailer nor arrest[ing] [the defendant] before obtaining a warrant," and (4) the police "imposed the restraint for a limited period of time, namely, two hours."[51]

In his motion for reconsideration, Mr. Spencer posits that an earlier case,

---

[48]   *Illinois v. McArthur*, 531 U.S. 326, 330 (2001); *see Flonnory v. State*, 805 A.2d 854, 857 (Del. 2001).

[49]   *McArthur*, 531 U.S. at 330; *see Flonnory*, 805 A.2d at 857.

[50]   *McArthur*, 531 U.S. at 331-33, 337.

[51]   *Id.* at 331-33.

*Segura v. United States*,[52] authorizes the action he believes § 2308 would demand in his case—*i.e.*, locking down 16 Imperial Drive under armed police guard and barring entry or use by any lawful resident or occupant, including the volatile Ms. Spencer who had confronted the police several times about her exclusion—not just for the least amount of time necessary to get a warrant but also the additional time to meet Delaware's statutory preference for a daytime warrant.[53]

In *Segura*, New York Drug Enforcement Task Force agents held an apartment pending the issuance of a search warrant.[54] While 19 hours passed between the seizing of the apartment and the issuance of a search warrant, agents actively attempted to obtain the warrant but were hindered by the realities of attempting to "secur[e] a warrant in a large metropolitan center" and not by any lack of diligence on the part of the agents.[55] Unlike Mr. Spencer's suggestion, *Segura* supports

---

[52]  468 U.S. 796 (1984).

[53]  Mr. Spencer also relies on *Mincey v. Arizona*, 437 U.S. 385 (1978) in his motion for reargument. *See* Mot. for Reargument ¶ 4. But that case is inapposite as the police in *Mincey* were conducting a warrantless search based on an erroneous exception to the warrant requirement. *Mincey*, 437 U.S. at 395 ("In sum, we hold that the 'murder scene exception' created by the Arizona Supreme Court is inconsistent with the Fourth and Fourteenth Amendments—that the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there."). Here the issue is the temporary seizure of a residence pending the issuance of a warrant.

[54]  468 U.S. at 812.

[55]  *Id.*

*McArthur*'s conclusion that a seizure of a home pending the issuance of a search warrant cannot and should not be "longer than reasonably necessary for the police, acting with diligence, to obtain the warrant."[56]

Here, the seizure of 16 Imperial Drive occurred at approximately 2:00 a.m. Because the police sought permission to conduct the search of the home between 10:00 p.m. and 6:00 a.m. a showing of exigency was required under § 2308.[57] Exigency, under that statute,[58] can be found where it is likely evidence may be tampered with, disturbed, or destroyed, either accidentally or intentionally, or where the evidence itself is fleeting.[59]

The affiant testified at the suppression hearing that Ms. Spencer attempted to return to the house, and he was concerned that if allowed in she would tamper with, disturb, or destroy evidence. This belief was reasonable. Ms. Spencer demanded

---

[56] *McArthur*, 531 U.S. at 332 (citations omitted).

[57] *Hanna*, 591 A.2d at 162 ("Even when a search is supported by probable cause and a warrant has been obtained, the search may not be conducted at night absent a showing of exigent circumstances which make it necessary to conduct the search at night.").

[58] Which is not the same as an exigency recognized to justify a warrantless search.

[59] *Scott*, 2007 WL 539650, at *2 (finding exigency existed because while the scene was secure, members of the non-defendant residence family would find a way into the residence and potentially tamper with, disturb, or destroy evidence that was in plain view); *id.* (finding, as an independent source, that exigency existed where some of the evidence was 'trace evidence' which could be lost if not gathered quickly).

entry to the house, officers denied this demand.[60] Upon learning she would not be let into the house immediately, she started pacing up and down her neighborhood block screaming that it was a mistake to call the police and demanding that she be let into her house because she did nothing wrong and because she had medication there.[61] Eventually, Ms. Spencer drove away from the residence when rebuffed. But still she returned around 5:30 a.m.

Mr. Spencer suggests that because the officers already secured the residence and prohibited entry, they could have just waited a few more hours and then conducted the search at 6:00 a.m.[62] But the officers should only secure the residence during the period the warrant was actively being secured. While our Courts have not expressly addressed this issue, it seems only reasonable when faced with facts such as this that the warrantless seizure and holding of a home against the express protest of a lawful occupant—an act of constitutional dimension—should not be extended unnecessarily to satisfy a statutory preference that the warrant sought be executed after 6:00 a.m.

The record reflects that an exigency existed for the obtaining of a nighttime

---

[60]   Suppression Hr'g, Def.'s Ex. 1 (body-worn camera from July 22, 2022).

[61]   *Id.*

[62]   Mot. to Suppress ¶ 9.

search warrant. If officers had not obtained the nighttime warrant then Ms. Spencer would have certainly entered the residence and either intentionally or unintentionally tampered with, disturbed, or destroyed evidence. Ms. Spencer fully exhibited to officers her intention to enter the residence at 2:00 a.m. (before the officers had obtained the search warrant) and she returned at 5:30 a.m. again with the express intent of entering the residence. In making her repeated demands, she screamed at officers to let her back in her residence and when she was refused she walked through her block yelling that she did nothing wrong, that she needed her medication, and that she shouldn't have called the police in the first place.[63]

The evidence adduced at the hearing of the motion demonstrates that *Franks* is wholly inapplicable as there was no false statement in the averment of exigency. There was an exigency—Ms. Spencer actively wanted to gain entry to the residence. Her presence in the residence could have led to evidence being tampered with, disturbed, or destroyed—intentionally or unintentionally. Officers were *only* able to stop Ms. Spencer from entering by applying for a nighttime search warrant and the temporary holding of the home was lawful only while officers attempted to secure judicial authorization to search it.

---

[63] Suppression Hr'g, Def.'s Ex. 1 (body-worn camera from July 22, 2022).

### C. THE SEARCH WARRANT APPLICATION SUFFICIENTLY ALLEGES EXIGENCY ON ITS FACE.

Apart from his *Franks* challenge, Mr. Spencer insists the search warrant affidavit's § 2308 averment is otherwise insufficient.

Eleven *Del. C.* § 2308 requires that the authorizing judicial officer be "satisfied" that an exigency exists; and our Supreme Court has found that "police [must have] a *reasonable basis* to believe that if the search warrant were not executed [at nighttime] evidence would be destroyed."[64] To reiterate, the review at this point is a four-corners examination. So, the § 2308 averment itself must sufficiently set out the affiant's *reasonable belief* that an exigency existed requiring the issuance of the nighttime search warrant.[65]

In *Scott v. State* our Supreme Court affirmed this Court's finding of exigency because officers were rightfully concerned about family members of a non-defendant resident entering the crime-scene residence and unintentionally tampering with, disturbing, or destroying evidence.[66] Specifically the trial court noted:

---

[64] *Dixon*, 567 A.2d at 856.

[65] *State v. Taylor*, 2014 WL 3973381, at *2 (Del. Super. Ct. July 25, 2014) (granting motion to suppress where the nighttime search warrant affidavit made no mention "about the immediate potential destruction of evidence"); *State v. White*, 2010 WL 369354, at *2-3 (Del. Super. Ct. Feb. 2, 2010) (finding the bare allegation that blood and biological evidence might degrade with the passing of time is not sufficient to show exigency justifying a nighttime warrant).

[66] *Scott*, 2007 WL 539650, at *2.

"evidence within the residence was in plain view and there was a danger of tampering or loss because . . . 'family [members] or others would find a way to enter the dwelling despite it being secure, and disturb the crime scene.'"[67]  Moreover, the trial court found exigency also existed because the officers needed to retrieve "trace evidence" which by its nature is fleeting.[68]

The affidavit shows that officers were concerned about the possibility that Ms. Spencer, who was not in custody and who lived at the residence, and who had "been reluctant to be co-operative,"[69]—which was a mild retelling given the evidence produced at the hearing[70]—would go back into the residence and tamper with, disturb, or destroy evidence.  Engaging in the review of this averment that the Court must at this point, the averment was both sufficient under § 2308 and well-

---

[67]  *Id.* (citing trial court).

[68]  *Id.*

[69]  Affidavit ¶ 9.

[70]  *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) ("The magistrate issuing the warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit—including the veracity and the basis of knowledge of persons supplying hearsay information—there is a fair probability that contraband or evidence of a crime will be found in a particular place." (citing *Illinois v. Gates*, 462 U.S. 213, 237 (1983)); *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) ("We review a magistrate's probable cause determination with great deference, considering it as a whole in a practical, commonsense manner, and not on the basis of a hypertechnical analysis of its separate allegations." (citing *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)); *Jensen*, 482 A.2d at 111 ("A determination of probable cause by the issuing magistrate will be paid great deference by a reviewing court and will not be invalidated by a hypertechnical, rather than a common sense, interpretation of the warrant affidavit." (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

grounded in fact. Ms. Spencer is the defendant's girlfriend, who lives at the residence, and who was reluctant to cooperate with the officers present. If let back into the house it is reasonable to believe she would have either intentionally or unintentionally tampered with, disturbed, or destroyed evidence.

Accordingly, an exigency existed justifying the issuance of a nighttime search warrant and that justification was sufficiently articulated in the supporting affidavit.[71]

### D. THE SEARCH WAS PROPERLY EXECUTED PURSUANT TO A WARRANT.

Mr. Spencer argues that the evidence obtained from the residential search should be suppressed because police began searching the residence before the warrant was issued.[72] In support of this contention, Mr. Spencer points to the

---

[71] In his reply brief, Mr. Spencer quotes extensively from four cases to support his proposition that the affidavit did not contain sufficient facts justifying the exigency needed for a nighttime search warrant. Reply Br. ¶¶ 2-7. All four cases are inapposite. *Mason v. State*, 534 A.2d 242, 252-54 (Del. 1987) (granting motion to suppress where nighttime search warrant affidavit "failed to allege with particularity facts indicating the existence of exigent circumstances justifying the issuance of a nighttime search warrant . . ."); *Henry v. State*, 373 A.2d 575, 577-78 (Del. 1977) (finding "not a word in the affidavit about escape or removal of anything to be searched for"); *Taylor*, 2014 WL 3973381, at *2 (finding affidavit made no mention "about the immediate potential destruction of evidence"); *White*, 2010 WL 369354, at *2-3 (finding the bare allegation that blood and biological evidence might degrade with the passing of time is not sufficient to show exigency justifying a nighttime warrant). Here, the affiant sufficiently lays out, with supporting facts, his reasonable belief that evidence may be tampered with, disturbed, or destroyed.

[72] Mot. to Suppress ¶ 10.

Evidence Inventory Worksheet that lists the "start time" of the search as 3:57 a.m.[73]

Testimony from the affiant at the suppression hearing showed that he recorded the 3:57 a.m. start time on the Evidence Inventory Worksheet after receiving confirmation from the Justice of the Peace magistrate that the search warrant had been authorized. Thereafter, the search warrant was transmitted from the Court to the affiant listing the start time as 4:00 a.m. Body-worn camera footage viewed at the suppression hearing showed officers first entering the residence at 3:59:20 a.m.[74]

The Court must first determine whether the police knew that the search warrant had been authorized before they began searching, since once officers receive notice that the magistrate had signed the warrant it is permissible for them to begin their search.[75]

Here the credible evidence shows that officers began their search only after receiving verbal confirmation that the warrant had been signed. The slight differences of recorded times in documents and recordings seem no more than timepiece differences or human error. The Court has no doubt the warrant was

---

[73] Mot. to Suppress, Ex. C at 1 (the first item was found at 0405).

[74] Suppression Hr'g, Def.'s Ex. 1 (body-worn camera from July 22, 2022).

[75] *See, e.g., Mason*, 534 A.2d at 245-46 ("The search warrant was then signed by the issuing Magistrate at about 12:20 a.m. on August 30, 1985. Detectives Eller and Bullen telephoned the officers at Mason's residence immediately after the Magistrate signed the warrant and instructed them to begin the search.").

actually authorized before the police began their search of 16 Imperial Drive that

yielded the firearms.

## VI.  CONCLUSION

Accordingly, Mr. Spencer's Motion to Suppress is **DENIED,** as is his motion

for reconsideration.

**IT IS SO ORDERED.**

_____

Paul R. Wallace, Judge